BRUBAKER *v.* CITY OF DETROIT.

Municipal Corporations—Salaries of Draftsman—Budget—Charters—Contracts.

Action of superiors of plaintiff, a draftsman working for municipal rapid transit commission, in first settling acceptable amount of salary for ensuing fiscal year with him at $2,400, inclusion of such amount for salary in proposed budget but without naming him, submission of such proposal to, and approval by, the common council, all pursuant to charter provisions *held*, as a matter of law not to constitute a binding contract with plaintiff to work for such fiscal year or to require city to maintain a fixed salary where detailed and voluminous records of commission contain no reference to contract although they had power to make necessary contracts.

Appeal from Wayne; Dehnke (Herman), J., presiding. Submitted October 13, 1937. (Docket No. 13, Calendar No. 39,627.) Decided December 14, 1937.

Assumpsit by John W. Brubaker against City of Detroit, a municipal corporation, for salary alleged to be due. Judgment for defendant. Plaintiff appeals. Affirmed.

*Black & Black,* for plaintiff.

*Paul T. Dwyer,* Assistant Corporation Counsel (*Raymond J. Kelly,* Corporation Counsel, of counsel), for defendant.

North, J. Plaintiff sues to recover salary claimed to be due him for the fiscal year 1931–1932. There was a judgment for defendant in the circuit court and plaintiff appeals.

Plaintiff, John W. Brubaker, was employed by the city of Detroit as a junior civil draftsman for the rapid transit commission. He had been engaged in such capacity from July 2, 1928. Plaintiff's claim arises from an alleged contract of employment for the fiscal year of July 1, 1931, to July 1, 1932, at a salary of $2,400 per year. The following facts appear from the testimony: In December of 1930, according to its usual custom, the rapid transit commission met for the purpose of preparing the department's budget for the ensuing fiscal year. The budget as adopted by the commission contained an item "junior civil draftsmen (3 at $2,400) $7,200." The budget was subsequently approved by the mayor and other city officials and was adopted by the common council on April 14, 1931. For the first six

months of the fiscal year 1931–1932 plaintiff received the full sum due him for salary of $1,200. In January, 1932, the city found itself in financial difficulties because of tax delinquencies and the common council passed an ordinance providing for a 10 per cent. reduction of salaries of all employees of the city of Detroit, effective January 1, 1932. Later further economies in expenses of various departments, including the rapid transit commission, were effected by a resolution passed by the common council. As a result of these reductions plaintiff received for the pay period ending January 15th, $90, and for periods ending February 1, 15, and March 1, 1932, $74 each, or a total of $312. From March 1 to June 30, 1932, although plaintiff's name appeared on the payrolls, no amount was entered as being due him and he received no salary directly from the city of Detroit. Instead he seems to have been paid under an arrangement whereby the salary allotted to two junior draftsmen was prorated among plaintiff and two other draftsmen, thus obviating the necessity of entirely suspending one employee. And during this period the working time of two draftsmen was divided among the three. Under this plan plaintiff received $78 per month for the months of March, April, May and June, 1932, a total of $312. Thus the total amount received for the six months ending June 30, 1932, was $624. This was $576 short of the $1,200 plaintiff claims he was entitled to receive. In addition plaintiff claims $126.40 in interest, making a total of $702.40.

At the close of the proofs both plaintiff and defendant made motions for a directed verdict. The trial court held that no controverted issue of fact was presented as to whether a contract of employment existed between the parties, and that this ques-

tion must be determined as one of law. He rendered judgment for defendant.

It is the theory of plaintiff's case that in preparing the budget for the rapid transit commission its chief engineer contacted the various employees in the department, including plaintiff, for the purpose of determining the amount which would be acceptable to them as compensation; that plaintiff's salary was fixed at $2,400 and this amount was put in the budget. This it is claimed was an offer on the part of plaintiff and that the offer was accepted on the part of the city of Detroit at the time the budget was approved by the mayor and adopted by the common council. It is urged that such a contract was within the scope of the authority of the rapid transit commission and the common council under the following charter provisions:

"It (the commission) may employ such officers, attorneys, engineers and engineering assistants as it deems proper. It shall within a reasonable time establish a system of civil service for the selection and retention of all other employees. The compensation of all such officers, attorneys, engineers, engineering assistants and all other employees shall be fixed by the commission subject to the approval of the common council." Title 4, chap. 24, § 18.

"It shall make in the name of the city of Detroit all contracts that may be necessary or proper for the execution of the powers on it conferred including all contracts in the construction and equipment of such rapid transit system, and all contracts with other municipalities with reference to the construction, equipment, operation, maintenance and management of such system and the financing of any obligations assumed under or imposed by any such contract and shall supervise, manage and direct the performance of such contracts." Title 4, chap. 24, § 19.

It is significant that notwithstanding it fairly appears from the record that the rapid transit commission kept detailed and somewhat voluminous minutes of its transactions, there is no testimony showing such minutes contain any reference to a contract having been entered into with plaintiff whereby he was employed for a year at $2,400. We are in accord with the holding of the circuit judge that no contract existed by which defendant employed plaintiff for a year at a fixed wage or salary, and quote the following from the judge's opinion:

"It is the position of the plaintiff that the action of the commission in reporting to the council that we contemplate the employment of three people here, of which plaintiff was one, without being named for the ensuing fiscal year, and that they should be paid a salary of $2,400 a year, that the act of council in approving that request and including it in the budget amounts to an approval of the contract. I am unable so to construe it. It seems to me that in order to make an approval of the contract, the terms of that contract, at least in broad outline, must be before the council. It must state the name of the parties to the contract, and the other important terms in it.

"It is conceded that there is nothing of the kind in this case. The council had no notice or information that the commission had made a contract for a year's employment or for any other period of employment with Mr. Brubaker; and, therefore, there could be no approval of a contract which was not itself, at least in outline, reported to the city council.

*    *    *

"Fairly interpreting Major Hallihan's testimony, it amounts, in sum and substance, to this and to nothing more; that the probable requirements of the commission from a financial standpoint was the principal matter under consideration; that it was anticipated that Mr. Brubaker, along with other em-

ployees in the office, would continue in the employment, would continue during the whole fiscal year, provided nothing came up to prevent it, but I think both sides would have been surprised if at that time it had been claimed that a definite contract had been entered into whereby the city was bound for a year's pay to Mr. Brubaker, and whereby he was legally bound to work for the city during that year, that he was not free to quit at any time without being charged at least with a moral breach of the contract."

Review of this record convincingly discloses that the course of conduct of the public officials which plaintiff contends constituted a contract for his employment for a year was nothing more nor less than the routine method of determining the items and amounts of municipal expenditures for which provision had to be made in the budget for the ensuing fiscal year. These proceedings were in accord with the provisions of the city charter which we quote in part:

"The various officers, departments, commissions and boards of the city created by law and this charter, or hereafter created, and required so to do by law, shall respectively transmit in duplicate to the city controller for compilation on or before the second day of January, in each year, their estimates of the amounts of money required for each activity within their respective departments for the ensuing fiscal year." Title 6, chap. 1, § 1.

"The budget so transmitted to the mayor shall be considered by the common council, which may revise, alter, increase or decrease it, but shall not increase the total thereof so as to exceed the aggregate amount authorized by law to be raised by taxation. * * * Provision shall be made for public hearings on the budget before a committee of the council or before the entire council sitting as a committee of

the whole.  Such consideration of the budget shall be completed by the council not later than the second Tuesday of April in each year.  The budget shall require for its adoption the votes of a majority of all members elected to the council.''  Title 6, chap. 1, § 4.

The circuit judge was right in holding as a matter of law under the record in this case that the defendant had not entered into a contract with the plaintiff for the latter's services during the fiscal year of 1931–1932 for $2,400.  The judgment entered in the circuit court is affirmed, with costs to appellee.

FEAD, C. J., and WIEST, BUTZEL, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.