## TUMEY v. CITY OF DETROIT.

1. APPEAL AND ERROR—MUNICIPAL CORPORATIONS—CONTRACT TO PAY. DEDUCTIONS FROM SALARY.

In action by city employees to recover sums deducted from salaries during 21 months in 1932 and 1933, record justified determination that issue as to whether there was a contract to pay plaintiffs the sums deducted when funds became available therefor was factual and properly submitted to jury.

2. MUNICIPAL CORPORATIONS—DEDUCTIONS FROM SALARY OF EMPLOYEES—BOOKKEEPING.

Claim of city that salaries of its employees had been reduced, made in action by salaried employees to recover sums deducted during 21-month period in 1932 and 1933 while city was in financial difficulties, was not consistent with bookkeeping as to payrolls and official action taken with respect to such items whereby nature and amount of withholdings indicated contract to make payment of sums claimed.

3. APPEAL AND ERROR—JUDGMENT NOTWITHSTANDING VERDICT—EVIDENCE.

In passing on defendant's motion for judgment notwithstanding verdict, based on grounds alleged in support of prior motion for a directed verdict, it is the duty of a court to construe the proofs as strongly as possible in favor of plaintiffs (3 Comp. Laws 1929, § 14531, as amended by Act No. 44, Pub. Acts 1939).

4. VERDICTS AND FINDINGS—WEIGHT OF EVIDENCE.

A verdict of a jury may not properly be set aside unless found to be against the overwhelming weight of the evidence.

5. MUNICIPAL CORPORATIONS—DEDUCTIONS FROM SALARY OF EMPLOYEES—WEIGHT OF EVIDENCE.

In municipal street railway employees' actions against city to recover sums withheld from salaries while city was in financial difficulties, verdict for plaintiffs for sums withheld pursuant to first three of a series of resolutions of controlling commission *held*, not against overwhelming weight of evidence.

6. SAME—RECOVERY OF DEDUCTIONS FROM SALARY—STATUTE OF LIMITATIONS—ESTOPPEL—QUESTIONS FOR JURY.

In consolidated actions by city street railway employees to recover sums deducted from salaries during 21-month period when city was in financial difficulties, where claimed agreement was that sums withheld would be paid when funds became available, the issue as to whether or not more than six years elapsed after funds became available before actions were started and whether defendant was estopped from relying on defense of statute of limitations were properly left to jury (3 Comp. Laws 1929, § 13976, as amended by Act No. 72, Pub. Acts 1941).

7. LIMITATION OF ACTIONS—BURDEN OF PROOF—PLEADING—EVIDENCE.

Where neither plaintiffs' pleadings nor proofs in actions on contract indicate that time prescribed by statute of limitations had not elapsed before action thereon was started, defendant had burden of showing that funds with which to pay previous deductions from salaries were available more than six years before commencement of action where plaintiffs claimed payments were due when funds became available (3 Comp. Laws 1929, § 13976, as amended by Act No. 72, Pub. Acts 1941).

8. Same—Burden of Proof.

> The burden is upon a defendant who relies upon a statute of limitations as a defense to prove facts which bring the case within the statute, unless such facts are sufficiently shown by the plaintiffs' evidence.

9. Appeal and Error—Question of Fact—Directed Verdict.

> Where issue as to whether defense of statute of limitations barred plaintiffs' right to recover sums defendant city had deducted from their salaries had been properly left as a question of fact to jury, the trial court was correct in refusing to set aside the verdict on ground that rights were barred as a matter of law (3 Comp. Laws 1929, § 13976, as amended by Act No. 72, Pub. Acts 1941).

10. Municipal Corporations—Presentation of Claims for Audit —Liquidated, Existing Obligation.

> It was unnecessary to present to common council of home-rule city for audit and allowance, claim for portion of salaries, earned by plaintiffs, which had been withheld while city was in financial difficulties and were payable when funds became available, as the obligation involved was liquidated and not a new one (Detroit Charter, title 6, chap. 7, § 11).

11. Executors and Administrators—Formal Proof of Authority —Waiver.

> Necessity for formal proof as to authority of special administrators to bring 13 actions, consolidated with 273 others *held,* waived where not brought to the attention of the trial court until hearing had for determining amounts of judgments to be entered and objection then raised was overruled by trial court.

12. Interest—Demand—Claims Against Home-Rule City.

> Where demands for portion of plaintiffs' salaries withheld by defendant home-rule city while it was in financial difficulties were unnecessary, as they would have been mere formalities, and sums were liquidated, interest was properly allowable from date jury found funds were available for payment of the claims.

13. Municipal Corporations—Construction of Resolutions—Deductions from Salaries of Employees—Finding of Jury.

> Where deductions from pay of city's street railway employees, who were paid on a monthly or yearly basis, pursuant to two resolutions of controlling commission, worded as though reducing salaries and differently from three preceding reso-

lutions, but pursuant to general policy of city council as indicated by ordinances, resolutions are construed as merely authorizing the withholding of a portion of the salaries until funds became available for payment thereof and where jury found all five resolutions were for same purpose and of the same character, plaintiffs were entitled to judgment in accordance with verdict (Detroit Ordinances Nos. 146-c, 166-c).

Appeal from Wayne; Brennan (Vincent M.), J. Submitted October 18, 1946. (Docket No. 38, Calendar No. 43,259.) Decided January 6, 1947.

Separate actions of assumpsit by Harry A. Tumey and others against City of Detroit, Department of Street Railways, for portion of salaries withheld during depression. Cases consolidated. Verdicts for plaintiffs. Judgments for plaintiffs in reduced amount. Defendant appeals. Plaintiffs cross appeal. Reversed and remanded for entry of judgments on verdicts.

*Thomas F. Chawke,* for plaintiffs.

*William E. Dowling,* Corporation Counsel, and *Clarence E. Page,* Assistant Corporation Counsel, for defendant.

CARR, C. J. Plaintiff Harry A. Tumey was employed by the city of Detroit, department of street railways, during the period from January 1, 1932 to October 1, 1933. Claiming that deductions during said period were made from his salary under an arrangement whereby he was entitled to recover the amount thereof, he brought suit in the circuit court of Wayne county. The declaration alleged that defendant withheld from plaintiff's salary five per cent. during the months of January and February, 1932, 10 per cent. thereafter until August 1, 1932, 55

per cent. during August, 10 per cent. from September 1, 1932, until January 1, 1933, and 24.3 per cent. thereafter until October 1, following. It was further alleged that plaintiff was promised that when funds became available the amounts so withheld would be repaid, that plaintiff performed his services in accordance with such agreement, that funds became available to make payment in accordance therewith, but that defendant refused to discharge the obligation claimed. The declaration, also, included the common counts in assumpsit.

Defendant filed its answer denying the existence of any contract or agreement to pay plaintiff the sums deducted from his salary and asserting 'that such salary was in fact reduced from time to time by the street railway commission. Defendant further claimed that plaintiff had been paid all salary owing to him and, hence, that there was no further liability on defendant's part. The statute of limitations was also pleaded.

Other parties, employees of defendant during the period in question, brought actions of like character, the pleadings and issues being identical, except as to names and amounts claimed, with those in the suit started by Mr. Tumey. Seventeen cases were started by administrators, either general or special, of the estates of deceased employees. All suits, 286 in number, were commenced during the period beginning March 27, 1942, and ending December 7, 1943. By agreement of counsel the cases were consolidated for trial before a jury.

At the conclusion of the proofs, defendant moved for a directed verdict, claiming in substance that there were no factual issues to be submitted to the jury and that under the showing made plaintiffs were not entitled to recover. The motion was taken under advisement under the provisions of 3 Comp.

Laws 1929, § 14531, as amended by Act No. 44, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 14531 [Stat. Ann. 1946 Cum. Supp. § 27.1461]), and the questions in issue were submitted to the jury, which returned a verdict in favor of plaintiffs for the full amount of their claims, with interest from July 1, 1939. Thereafter, defendant moved for judgments notwithstanding the verdict, which motion was granted in part and denied in part. Separate judgments were entered for plaintiffs in accordance with the determination of the trial court. All parties have appealed.

Pertinent provisions of the charter of the city of Detroit are found in title 4, chap. 13, which provides for the operation and maintenance of a street railway system. A board of street railway commissioners was created pursuant to such provisions, with full authority, subject to the approval of the mayor, to supervise, manage and control the system, "as fully and completely as if said board represented private owners." Authority was specifically granted to appoint a general manager and other employees, and to make payment of expenses out of the earnings of the railway system. The charter provisions in force during the period involved in these cases were sufficiently broad in scope to cover all matters concerning employees, and other details of operation.

In the latter part of 1931, it was considered necessary by the street railway commission to reduce costs of operation to accord with reductions in income. December 22, 1931, a resolution was adopted by the street railway commission, referring to 33 salaried positions, and directing the general auditor to "deduct 10 per cent. from the salaries after each of the positions shown above and credit the amount so deducted to an account to be termed: 'Emergency contributions from salaried employees.'" On

December 29th, following, a second resolution was adopted, effective as of January 1, 1932, providing for a like deduction of 10 per cent., applicable to all positions carrying a salary of $250 a month or more, and five per cent. from all salaries from $100 to $225 a month, inclusive. As in the prior resolution all such deductions were required to be credited to "Emergency contributions from salaried employees." Under date of January 6, 1932, the general manager of the street railway system issued a notice to employees with reference to the action of the commission, stating therein that deductions from salaries would be made accordingly, and that the amounts thereof would be credited to the account designated.

By ordinance No. 146–C, approved January 6, 1932, the common council of the city of Detroit provided that all officers and employees of said city, other than those of the street railway system, should contribute to the city a sufficient number of days' work each pay period so that the amount of their contributions would equal 10 per cent. of the salaries or wages of officers and employees generally, and an additional 10 per cent. of the salaries or wages of officers or employees receiving in excess of $4,000 per year. Subsequently, ordinance No. 166–C was adopted, referring to the prior ordinance and providing for further contributions by officers and employees of the city. The construction of said ordinance No. 166–C was before this Court in *Detroit Municipal Employees Ass'n* v. *City of Detroit,* 310 Mich. 480, in which it was held that the deductions from salaries and wages made thereunder did not constitute reductions in pay and were, in fact, contributions that were to be repaid later when payment became possible.

On the trial in circuit court plaintiffs contended that they were given assurances by the general manager and by other supervisory officers of the street railway system that they would receive the sums deducted from their respective salaries as set forth on the payrolls of the defendant when funds became available for that purpose. It was further contended that the services were rendered, and accepted, in reliance on such representations and that, under the circumstances disclosed by the proofs, the street railway commission was bound by the statements of its general manager on the ground of express or implied authority, or of ratification. It was also claimed that additional deductions, subsequently authorized, were made pursuant to the policy evidenced by the alleged agreement.

At a meeting of the commission held March 1, 1932, another resolution was adopted, referring to ordinance No. 146–C and providing for the payment of salaries in strict compliance therewith. This was followed July 28, 1932, by action requiring, in terms, that during the month of August following, the pay of salaried employees, other than those on half time, be reduced an additional 50 per cent.; and on December 22, 1932, on the recommendation of the general manager, a further reduction in the sum of 14.3 per cent. was authorized. The reductions, or deductions, contemplated by the various resolutions of the commission, other than that applicable solely to the month of August, 1932, continued in effect until October 1, 1933.

The trial court submitted to the jury the question whether, under all the proofs, there was a contract or agreement obligating defendant to pay to plaintiffs the sums deducted from their salaries, pursuant to resolutions of the street railway commission,

when funds became available for such payment. The jury was charged, in substance, that plaintiffs could not recover unless such agreement was made as claimed. A careful examination of the entire record brings us to the conclusion that the issue was factual and that it was properly submitted to the jury for determination.

The action of the street railway commission in establishing the account, designated as ''emergency contributions from salaried employees,'' and carrying on the payrolls the salaries of the plaintiffs in the amounts originally fixed therefor, was not consistent with the claim of the defendant that the salaries were, in fact, reduced. It further appears that warrants, signed by the president of the commission, were issued to the city treasurer, in the full amount of the payrolls; that the city treasurer made deposits in the payroll account in such sums as to cover the salaries in full; that the certification to the civil service commission of salaried employees set forth the respective salaries payable to each in accordance with the payrolls without reference to deductions or reductions; that the general ledger of the defendant, in the account entitled ''wages payable'' carried the full amount of such salaries as indicated by the payrolls; and that January 16, 1932, Joseph E. Mills was hired as general manager at a salary of $15,000 a year, ''less a 20 per cent. reduction under the emergency contribution policy of the department'' which salary was carried on the payrolls rather than the sum that he actually received after the deductions had been made. It was for the jury to determine whether such acts involved merely matters of bookkeeping, as claimed by defendant, or whether, interpreted in the light of the situation established by the proofs, they indicated the existence of the agreement on which plaintiffs relied.

Likewise, whether the general manager had authority, express or implied, to make the statements above referred to, and the question whether there was ratification by the commission if actual authority was lacking, were for the jury.

In passing on the motion for judgments notwithstanding the verdict, based on the grounds alleged in support of the prior motion for a directed verdict, it was the duty of the court to construe the proofs as strongly as possible in favor of plaintiffs. *Anderson* v. *Kearly*, 312 Mich. 566; *Lane* v. *B & J Theatres, Inc.*, 314 Mich. 666. A verdict of a jury may not properly be set aside unless found to be against the overwhelming weight of the evidence. *McConnell* v. *Elliott*, 242 Mich. 145; *Werker* v. *Mc-Grain*, 315 Mich. 287. On the record before us it cannot be said that it was against such weight, at least as to the deductions from salaries made under the first three resolutions of the street railway commission, above mentioned. The additional deductions provided for by the resolutions of July 28, 1932, and December 22, 1932, will be discussed further in passing on plaintiffs' cross-appeal.

Defendant further claimed on the trial that the statute of limitations* barred recovery by plaintiffs. Under the agreement that the jury found had been made, plaintiffs could not have maintained their suits to recover the sums deducted from their salaries until funds became available out of which payment might properly have been made. It was contended by defendant that the financial statements of the Detroit street railway system, as of June 30, 1934, and June 30, 1935, disclosed that during those fiscal years operations were on a profitable basis;

---

* See 3 Comp. Laws 1929, § 13976, as amended by Act No. 72, Pub. Acts 1941 (Comp. Laws Supp. 1945, § 13976, Stat. Ann. 1946 Cum. Supp. § 27.605).—REPORTER.

and that substantial balances remained in each year after the payment of the costs of operation, which might have been used to pay plaintiffs' claims. The existence of favorable balances, however, was not sufficient to establish that funds were actually available for payment to plaintiffs. On behalf of plaintiffs it was shown that requests for payment were made of the officials of the street railway system and that such requests were denied, it being claimed that funds were not available therefor. It was further contended that the failure on the part of defendant to advise plaintiffs that their claims could be paid, estopped defendant from relying on the statute of limitations. The claims of the parties with reference to the question whether more than six years had elapsed after funds became available for payment and before the starting of the suits were submitted to the jury. The issue based on the claim of estoppel was also submitted. It is apparent from the verdict returned that the jury found either that the statute had not run or that defendant was estopped to assert it.

Under the facts of this case we think the burden of proof rested on the defendant to establish its claim that funds were available more than six years before plaintiffs' actions were commenced. Neither plaintiffs' pleadings nor their proofs indicated that the time prescribed by the statute had elapsed before the suits were started. In 3 Callaghan's Michigan Pleading & Practice, pp. 545, 546, it is said:

"Generally, however, the burden is upon a defendant who relies upon a statute of limitation as a defense to prove facts which bring the case within the statute, unless such facts are sufficiently shown by the plaintiff's evidence. Thus, where that fact is essential, the defendant has the burden of proving that a writ was not issued on its date. Where the

defendant has resided a part of the time in another state or country, he has the burden of showing that the sum of the times of his presence within the jurisdiction is sufficient to satisfy the statute. And where the defendant is a foreign corporation, the burden is upon it of showing that it had complied with the statutory provision for service of process upon it in Michigan, so as to be considered, for the purpose of being sued, as domiciled in this State."

The language of the text is supported by the decisions of this Court. See *McLaughlin* v. *Aetna Life Ins. Co.,* 221 Mich. 479, and cases there cited. See, also, 34 Am. Jur. p. 352; *Van Buskirk* v. *Kuhns,* 164 Cal. 472 (129 Pac. 587, 44 L. R. A. [N. S.] 710, Ann. Cas. 1914 B, 932). In the case at bar it cannot be said as a matter of law that plaintiffs' rights of recovery were barred by the statute. Under the proofs the issue was one of fact for the determination of the jury. *Ames* v. *MacPhail,* 289 Mich. 185. The trial court was correct in refusing to set aside the verdict on this ground.

Defendant further contends that plaintiffs failed to present their claims to the common council of the city of Detroit for audit and allowance, and that such failure is a bar to the prosecution of these actions. Reliance is placed on title 6, chap. 7, § 11, of the city charter which requires that the common council shall audit and allow all accounts chargeable against the city and further prescribes the procedure to be observed in connection with the presentation of claims. Attention is called to prior decisions of this Court involving the interpretation and application of charter provisions imposing such requirement. In none of the cases referred to, however, were the facts analogous to those involved in the case at bar. The agreement on which plaintiffs herein rely, as found by the jury, did not create an

obligation but merely provided that a part of the salaries which plaintiffs were to be paid for services rendered to defendant might be withheld until funds became available for payment. Such salaries were actually earned as the services were performed. Postponing the payment of the deductions made under the resolutions of the street railway commission did not impose a new obligation on defendant but rather operated to its advantage. The greater portions of the salaries were paid on a semimonthly basis. The sums withheld were liquidated in amount. Under the circumstances it was unnecessary to present the claims to the common council. See *Detroit Municipal Employees Ass'n* v. *City of Detroit, supra; Thal* v. *Detroit Board of Education, ante,* 351.

Thirteen of the cases included in the order of consolidation for trial were instituted by special administrators. Counsel for defendant contend that in these cases plaintiffs were not entitled to judgments because no showing was made that the plaintiffs were authorized, by appropriate orders of the probate court, to commence and maintain the actions. Attention is called to Act No. 288, chap. 2, § 61, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289-2 (61), Stat. Ann. 1943 Rev., § 27.3178 [131]), which prescribes the powers and duties of special administrators. On behalf of plaintiffs it is claimed the necessity for formal proof was waived by counsel for defendant. The record shows that during a colloquy between counsel with reference to the matter the attorney for defendant stated: "I said if you will put the letters testamentary, a copy of them, in the file, that is all I care about." To such statement counsel for plaintiffs replied that the letters would be produced on the following day. Whether they were filed does not appear, but the

question was not raised by defendant's motion for a directed verdict, nor by the motion for judgment notwithstanding the verdict. There is no showing that the attention of the trial court was in any way called to the matter until a hearing was had as to the amounts of the judgments to be entered. We think the objection at that time came too late.' Had it been seasonably raised during the trial plaintiffs would have had an opportunity to ask for leave to reopen their proofs for the purpose of showing the authority of the special administrators. In rejecting defendant's contention when made at the hearing above referred to, the trial court said:

"Well, as I understand the theory upon which this case was presented all of these formalities were determined at the outset of the trial and it was decided that the 286 cases should be tried as one and no technical objections were made at that time as to the right of any particular plaintiff to proceed. Exhibit 4 was introduced in evidence and it was conceded by counsel that either the full amount claimed in exhibit 4 should be awarded to the plaintiffs or nothing should be awarded to the plaintiffs. And it seems to me that under that—in view of that stipulation that the objection now comes too late, the objection based upon the technical grounds that some of the plaintiffs were represented by special administrators. The objection therefore is overruled."

The conclusion indicated in the language quoted finds support in the record. The trial court was correct in holding that the necessity for formal proof as to the authority of the administrators had been waived.

The trial court submitted to the jury a special question as to whether funds became available for payment of plaintiffs' claims on or before July 1, 1939, as claimed by plaintiffs. This question was

answered in the affirmative. In accordance therewith interest was allowed on the claims from July 1, 1939, to the date of the entry of the judgments. Defendant claims that formal demands for payment were not made, and that interest should only have been allowed to plaintiffs from the dates that their respective suits were commenced. Such demands were unnecessary. Plaintiffs' claims were liquidated, and under the facts involved demands would have been mere formalities. *Thal* v. *Detroit Board of Education, supra.* Interest was properly allowed from July 1, 1939, to the date of the entry of judgments.

This brings us to a consideration of the merits of plaintiffs' cross-appeal. The trial court granted in part the motion for judgments notwithstanding the verdict, as above stated, holding that the 50 per cent. deduction from plaintiffs' salaries during the month of August, 1932, pursuant to the resolution of the street railway commission adopted July 28, preceding, and the 14.3 per cent. deduction in effect from January 1, to October 1, 1933, were in fact absolute reductions in pay. The amounts of the judgments were determined in accordance with this holding. Plaintiffs claim that the verdict of the jury should have been permitted to stand as rendered. The argument is made in substance that there is no proper basis for differentiating between the deductions referred to and the other deductions involved herein. We think the argument is well founded. It is a fair conclusion under the proofs that all deductions from the salaries of employees, as authorized from time to time by resolutions of the street railway commission, were made in accordance with a general policy, evidenced by ordinances of the common council (*Detroit Municipal Employees Ass'n* v. *City of Detroit, supra*), and by resolution of the board of edu-

cation of the city of Detroit (*Thal* v. *Detroit Board of Education, supra*), as well as by the acts of the commission itself. Such policy contemplated the withholding of certain percentages of salaries and wages until such time or times as financial conditions rendered payment feasible.

While the resolution of the street railway commission applicable to the month of August, 1932, provided, in terms, for the reducing of salaries, it must be construed in the light of the general situation existing and with reference to the prior resolutions herein involved. In this connection the proceeding of the street railway commission at a meeting held May 25, 1937, is of some significance. The minutes of said meeting disclose that a communication from the Salaried Employees Association of the department had been received, requesting payment of the "half month's pay that was borrowed from the employees in August of 1932." The commission did not at that time take the position that the 50 per cent. deduction from salaries during the month in question constituted an absolute reduction in pay, but referred the request to the general manager for investigation and resubmission at the next meeting. On August 17, 1937, the matter was again brought up at a meeting of the commission, the minutes indicating that there was some discussion relative to claims of salaried employees, "for back pay due from the payless pay days of 1932." The minutes further recited:

"The general manager reported that, in his opinion, there is no reason why this claim should not be paid, except that at the present time the department has not the funds with which to make the restitution, but that same should be paid when, as and if the funds are available. The commissioners indicated

that they are in accord with the general manager's opinion.''

While no formal action was taken by the commission at this meeting, expressly recognizing the validity of plaintiffs' claims based on the reduction in August, 1932, it is of some significance that the commission did not at that time deny the claims were meritorious.

The resolution adopted by the street railway commission December 22, 1932, approved recommendations of the general manager of operation in terms providing for the establishing of a five-day week for salaried employees. The general manager pointed out in his recommendations that: ''This is equal to another 14.3 per cent. reduction and when added to the cuts already in operation, will mean that our salaried force has accepted total reductions in pay ranging from 27 per cent. to 33 per cent.'' In the notice given by the general manager of operation, calling attention to the action taken by the commission, it was pointed out that such action meant a reduction in salaries of approximately 14.3 per cent., and that it was ''strictly in accordance with the ordinance affecting all other city departments, including the police department, fire department, department of public works, public lighting commission, water board, legal department, et cetera.'' Obviously, the general manager of operation, whose recommendations the commission followed, interpreted the action taken as in harmony with the general policy of the city with respect to deductions from the salaries and wages of municipal officers and employees. The proofs fully justify the conclusion of the jury that the purpose sought to be accomplished was a further deduction in accordance with such policy. Plaintiffs were hired at specified

monthly or yearly salaries. They were not on an hourly rate, or a per diem, basis. Some of the plaintiffs testified on the trial that the amount of time they actually put in, in working for defendant during the period from January 1, to October 1, 1933, was substantially the same as it was prior to such period.

We think it was a question for the jury to decide whether the deductions made under the resolutions of the commission, adopted July 28, 1932, and December 22, 1932, were of the same character as the other deductions involved in the case. The jury determined the matter in accordance with the claims of plaintiffs. Such determination finds support in the record and, for reasons hereinbefore set forth, the verdict of the jury must be held to be conclusive. It follows that the trial court was in error in granting, in part, the motion for judgments notwithstanding the verdict.

Other questions raised by counsel for defendant on the oral argument and in their brief have been considered and found to be without substantial merit. For the reasons above stated the order of the trial court, granting in part the motion for judgments notwithstanding the verdict, is set aside, and the cases remanded with directions for the entry of an order denying said motion, and for the entry of judgments in accordance with the verdict of the jury, with costs to plaintiffs.

BUTZEL, BUSHNELL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.