DETROIT MUNICIPAL EMPLOYEES ASSOCIATION *v.*
CITY OF DETROIT.
LYONS *v.* SAME.

1. LIMITATION OF ACTIONS — MUNICIPAL CORPORATIONS — WITHHELD SALARIES OF EMPLOYEES.

   Finding of trial court in action, commenced in April, 1951, to recover portions of salaries of municipal employees which had been withheld from January 7, 1932, to June 1, 1934, that funds were available for payment of the withheld salaries for more than 6 years before action was commenced may not be said to be against the clear preponderance of the evidence (CL 1948, § 609.13).

2. MUNICIPAL CORPORATIONS—WITHHELD SALARIES—APPROPRIATIONS.

   The making of an appropriation by city out of available moneys for purpose of paying sums withheld from their salaries dur-

REFERENCES FOR POINTS IN HEADNOTES
[1] 34 Am Jur, Limitation of Actions § 454.
[4] 34 Am Jur, Limitation of Actions §§ 327, 453.

ing a part of the depression is not a prerequisite to "availability" of such funds as the term was used in the withholding agreement nor as a condition precedent to commencement of action.

3. Same—Withheld Salaries—Conversion.

Use of moneys, representing collections of delinquent taxes originally levied and appropriated to pay portion of salaries of plaintiffs that was withheld pursuant to city's agreement to pay when funds were available, for other purposes than payment of plaintiffs would constitute a conversion of such funds' which would start the running of the statute of limitations, if it had not already started (CL 1948, § 609.13).

4. Limitation of Actions—Repudiation of Agreement to Pay Portion of Salary Withheld—Evidence.

Official actions of defendant city long antedating resolution of city council which plaintiffs' claimed repudiated city's original promise to pay sums withheld from employees' salaries during depression *held,* to have sufficiently repudiated the promise to start the running of the statute (CL 1948, § 609.13).

Appeal from Wayne; Toms (Robert M.), J. Submitted October 13, 1955. (Docket Nos. 4, 5, Calendar Nos. 46,508, 46,509.) Decided March 1, 1956.

Assumpsit by Detroit Municipal Employees Association, a Michigan corporation, assignee, against the City of Detroit, a municipal corporation, to recover sums claimed due municipal employees under ordinance requiring contributions from wages during financial emergency. Christian H. Hecker intervenes as party defendant.

Similar action by Fred W. Lyons for himself and as assignee of certain municipal employees.

Cases tried concurrently and consolidated on appeal. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Colombo, Colombo & Colombo,* and *Kelley & Kelly* (*John G. Dunn,* of counsel), for plaintiffs.

*Paul T. Dwyer,* Corporation Counsel, *Nathaniel H. Goldstick* and *Helen Miller Smith,* Assistants Corporation Counsel, for defendant City of Detroit.

*Chester J. Morse* and *Stanley E. Beattie,* for intervening defendant.

DETHMERS, C. J.   Plaintiffs brought these suits on April 19 and 20, 1951, to recover amounts deducted under Detroit city ordinance No 146–C from the salaries of plaintiffs or their assignors as employees of defendant during that portion of the depression period extending from January 7, 1932, to June 1, 1934. For history and background and construction to be given to that and similar ordinances and resolutions recourse should be had to *Detroit Municipal Employees Association* v. *City of Detroit,* 310 Mich 480; *Thal* v. *Detroit Board of Education,* 316 Mich 351; *Tumey* v. *City of Detroit,* 316 Mich 400; *Locke* v. *City of Detroit,* 335 Mich 29. Citing those cases as authority, plaintiffs say that the deductions were not salary reductions (see contrary holding in *Brubaker* v. *City of Detroit,* 282 Mich 309), but withholdings, as they were termed in the *Municipal Employees Association* and *Thal Cases,* or, as stated in the *Tumey* and *Locke Cases,* contributions made by employees under an implied promise by defendant to repay them when funds became available. The cases at bar were tried together by the court without a jury. Finding as a fact that more than 6 years had elapsed from accrual of the causes of action to date of suit, the court held the claims barred by the statute of limitations* and entered judgments accordingly of no

---

* CL 1948, § 609.13 (Stat Ann 1949 Cum Supp § 27.605).—REPORTER.

cause for action in favor of defendant, from which plaintiffs appeal.

It is plaintiffs' theory that on authority of the 4 above-cited cases there was no obligation on defendant to pay until funds were available, that funds are not legally available until appropriated for that purpose, and that because defendant did not show that any such appropriation had been made more than 6 years before commencement of suit, therefore defendant failed to sustain the burden resting on it of proving when the statute commenced to run and that, hence, the claims should not be held to be barred.

In the *Municipal Employees Association* and *Thal Cases* this Court did not pass on the question of when the causes of action accrued and the statute started to run, although in the former it appears that this Court considered the statute to have been running prior to and to have been tolled by a partial payment in 1937. There is no support in those cases for plaintiffs' theory that the statute would not begin to run until funds became available for payment and that they are not available until appropriated therefor.

In *Locke* defendant urged that the cause of action accrued and the statute began to run when the withholdings of salary occurred. Relying on *Tumey*, we held, to the contrary, that the cause of action accrued when funds were available for payment, that defendant had failed to show when funds had become available and, for that reason, we agreed with the finding of fact of the trial court, sitting without a jury, that defendant had failed to sustain the burden resting on it to prove when the statute began to run. There was no holding or language in *Locke* to the effect that funds could not be said to be available for payment until appropriated for that purpose.

In *Tumey* the plaintiff alleged and testified that at the time portions of his salary had been withheld he had been promised by his superiors that he would be repaid when funds became available for that pur-. pose and that thereafter funds actually became available. Under instructions that plaintiff might not recover unless such agreement had been made, the jury found for the plaintiff and answered a special question to the effect that funds became available for such payment on or before July 1, 1939. From this it is clear that plaintiff in that case sustained the burden resting on him of proving the agreement and the occurrence of events entitling him to recover under its terms. On that state of the record this Court held that the burden of proof rested on defendant to establish its claimed defense under the statute of limitations and went on to say that a mere showing of favorable balances in defendant's accounts at a time more than 6 years prior to commencement of suit did not necessarily suffice to establish that those funds were actually available at such time to pay plaintiff inasmuch as other proofs were to the contrary, particularly testimony that, at that very time, plaintiffs' requests for payment had been rejected by defendant's officials on the ground that funds were not available therefor. The essence of our holding was that availability of funds for such payment was a question of fact, which had been determined by the jury, and that the state of the proofs was not such that we could hold as a matter of law that the jury's finding as a matter of fact with respect thereto was in error. We did not hold there that availability of funds depended on appropriation therefor.

In the instant cases the court found, as a fact, that funds were available for payment of plaintiffs more than 6 years prior to suit. Does that finding, as plaintiffs contend, run counter to the law of the deci-

sions in *Tumey* and *Locke*? Not at all, inasmuch as we did not there hold that, as a matter of law, funds were not available and the statute had not begun to run more than 6 years before suit, but, on the contrary, we held that that question was one of fact for the jury or trial court and that we could not hold the finding of fact that funds had not been thus available to be, as a matter of law, erroneous under the proofs in the record. Here the shoe is on the other foot, with the trial court's finding as a fact that funds were available for payments of plaintiffs more than 6 years before suit. The holdings in *Tumey* and *Locke* do not require, nor are we willing to hold, that as a matter of law that finding was wrong under the proofs in this case. Neither do we consider the finding to be, as a matter of fact, against the clear preponderance of the evidence. The pertinent proofs are as follows: As far back as in 1936 or 1937 defendant had available and unallocated a surplus of $8,000,000, sufficient to pay all salary withholdings. The surplus had resulted from depression-induced economies and from the ultimate collection of taxes delinquent and unpaid when the salary withholdings occurred. This money defendant used for the construction of a sewage-disposal system, although at that time an outright grant of $9,000,000 from the Federal government and its agreement to purchase $11,000,000 worth of defendant's bonds, to be paid out of earnings of the sewage-disposal system, would have sufficed to finance the entire project. The auditor general of the city testified that defendant could have caused the surplus to be applied on plaintiffs' claims. In fact, plaintiffs have contended here that said surplus was made up of delinquent tax collections originally levied and appropriated to pay the salaries in question and that when collected they constituted a trust fund for payment thereof which was improperly diverted to sewage-disposal

system purposes; and in the cited case at 310 Mich 480, plaintiff association, also a plaintiff herein, alleged the availability of said fund for payment of plaintiffs. Availability of this surplus fund was not shown in the proofs in *Locke* where it might have been urged as a defense, and in the *Tumey, Thal* and *Municipal Employees Association Cases* such showing would have been without avail because suits there were instituted within 6 years thereof. The auditor general also testified to the existence in defendant's general fund of surpluses approximating $5,000,000 at the end of the fiscal year on June 30, 1943, and again June 30, 1944, which would have been sufficient to pay all the salary withholdings and that the city council could have directed payment thereof out of said surpluses, but that the surplus in 1943 was used to effect a tax reduction for the ensuing year and that the surplus in 1944 was used during the next year for capital expenditures. Under such state of the record we cannot say that the court's finding that funds were available for payment of withheld salaries was against the clear preponderance of the evidence. While we did say in *Tumey* that the existence of favorable balances would not alone suffice to prove that funds were available to pay plaintiffs, especially when, as there, the plaintiffs' requests for payment had been rejected at that time on the ground of unavailability of funds, and with good reason because such balances might have been needed for the continued proper functioning of city government, nonetheless when, as here, the proofs established surpluses at the end of fiscal years sufficient to pay plaintiffs' claims and there is testimony that the surpluses were not essential to defendant's operations, could have been paid on plaintiffs' claims, and were used for tax reduction and capital outlays, we think the existence of such surpluses under such circumstances and when used

for such purposes suffices to support the court's finding of fact of the availability of funds to pay plaintiffs. The cases at bar are thus to be distinguished on the facts from *Tumey* and *Locke.*

Plaintiffs contend, however, that funds are not legally available to pay them until defendant's city council has appropriated them for that purpose. That was not the meaning of our decision in *Tumey* when we held that plaintiffs were entitled to repayment when funds were "actually available for payment to plaintiffs" or when "funds became available out of which payment might properly have been made" or "when payment became possible" or "feasible." By such terms reference was made to the existence of funds which could properly have been appropriated for payment of plaintiffs without impairment or disturbance of governmental operations and services and not merely funds already appropriated for the purpose of paying plaintiffs. Our holding in *McVeigh* v. *City of Jackson,* 335 Mich 391, that the city might not, in violation of its charter provisions, expend funds for a purpose not included in the annual budget or any appropriation is scarcely authority for plaintiffs' contention that without an express appropriation therefor funds cannot be said to be available within the meaning of the agreement between the parties here. If plaintiffs were correct in their contention that their cause of action would not accrue nor the statute start running until the making of such an appropriation, it would follow that, as a prerequisite to the right to maintain their action at all, the burden would rest on them to allege and prove that such appropriation had been made before suit. *Halladay* v. *Weeks,* 127 Mich 363 (89 Am St Rep 478); *Van Buskirk* v. *Kuhns,* 164 Cal 472 (129 P 587, 44 LRA NS 710, Ann Cas 1914B, 932). Plaintiffs have neither alleged nor proved such an appropriation.

Plaintiffs also urge, as previously indicated, that the 1937 use for a sewage-disposal system of moneys representing collections of delinquent taxes originally levied and appropriated to pay plaintiffs constituted a conversion and misappropriation of funds held in trust for them. If that were correct, the statute would have started to run at least as of the date thereof, if not before.

Finally, plaintiffs urge that the cause of action accrued and the statute started running on June 26, 1945, when defendant's city council adopted a resolution which plaintiffs say amounted to a repudiation of defendant's original promise to pay when funds became available. We do not read the resolution as a repudiation. If it is, it in nowise alters the fact that, under the agreement, payment was to be made when funds were available, that they became available considerably previous to the resolution and that the cause of action had therefore accrued and the statutes started running before the resolution's adoption. Furthermore, other official actions of defendant, antedating this resolution and occurring more than 6 years before suit, partook far more of the nature of repudiation sufficient to start the statute running.

Affirmed, with costs to defendant.

SHARPE, SMITH, REID, BOYLES, KELLY, and CARR, JJ., concurred.

BLACK, J., took no part in the decision of this case.