**Irving M. WALTZER, Plaintiff-Appellee,**

v.

**TRANSIDYNE GENERAL CORPORATION, Defendant-Appellant.**

No. 80–1561.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 31, 1982.

Decided Jan. 3, 1983.

Rehearing and Rehearing En Banc Denied March 11, 1983.

Steven B. Haffner (argued), Law Offices of Steven B. Haffner, Allen Zemmol, Southfield, Mich., for defendant-appellant.

Jeffrey G. Heuer, Jaffe, Snider, Raitt, Garratt & Heuer, Brian G. Shannon (argued), Detroit, Mich., for plaintiff-appellee.

Before MERRITT and CONTIE, Circuit Judges, and WEICK, Senior Circuit Judge.

CONTIE, Circuit Judge.

Transidyne General Corporation (Transidyne) appeals from a $121,500 judgment in favor of Irving Waltzer resulting from an alleged breach of a stock subscription contract. Three issues meriting discussion are a statute of limitations question; the propriety of restrictions placed upon the testimony of Allen Zemmol, an attorney of record in this case for Transidyne; and an issue arising under Rule 36 of the Federal Rules of Civil Procedure.

This litigation stems from the formation of Transidyne, a Delaware corporation with its principal place of business in Ann Arbor, Michigan, in 1967 and early 1968. In June, 1967, Howard Diamond, Transidyne's president, met with Waltzer, a New York accountant. By letter dated September 22, 1967, Transidyne offered to sell 10,000 shares of stock at $5.00 per share jointly to Waltzer, Sam Pakula and Robert Feuer. This offer also provided that Waltzer could attend meetings of Transidyne's board of directors and that he could purchase 1,000 additional shares at the same price within one year. The offer required full payment by November 22, 1967. A subsequent letter from Transidyne stated that the amount was due within thirty days after notice, but such notice was never given. Waltzer signed the offer and remitted $5,000 of the total amount due. He has maintained throughout this lawsuit both that the September 22nd document was a valid contract and that under it, he was ultimately entitled to 5,400 shares which he never received.

Transidyne retained Allen Zemmol as legal counsel in October, 1967. Fearing securities laws violations in connection with the earlier transactions, Zemmol suggested that

the company hold an investors' meeting in New York on November 20 and 21, 1967. A letter about the upcoming meeting which was sent to potential shareholders stated that Transidyne was attempting to comply with Securities Exchange Commission regulations and that all investors would be required to execute a financing agreement and an investment letter. The notice did not indicate whether signing the new documents would rescind prior agreements.

The parties disagree about what transpired at the meeting. Diamond testified that he spoke directly to Waltzer and that the latter agreed to rescind the September 22nd agreement. Conversely, Waltzer testified that he did not stay long at the one meeting he attended and that he neither was told of, nor agreed to, rescission of the original agreement. Zemmol, who spoke at the investors' meeting, was called as a defense witness. When Zemmol attempted to contradict Waltzer's version of the meeting, however, the district court sustained plaintiff's objection to the testimony.

By letter of December 6, 1967, Transidyne again asked Waltzer to complete the new documents. On December 20, Waltzer and Martin Feuer remitted $25,000 toward the balance due. The company responded that as soon as both the remainder of the balance and the signed documents were received, stock would be issued. After Waltzer paid another $10,000 without submitting the documents, Transidyne demanded on January 11, 1968, that the documents be completed within one week. On January 17th, Transidyne cancelled Waltzer's subscription by letter and refunded $15,000 of his money. On January 18th, Waltzer, Martin Feuer, and Bennett Pakula executed financing agreements and investment letters and remitted the balance due. Waltzer testified that when he received Transidyne's letter on January 22nd or 23rd, he returned the $15,000 check.

On January 26, 1967, the company returned Waltzer's signed documents and checks. Transidyne would not permit him to become a shareholder because the stock option and meeting attendance clauses of the September 22nd agreement granted to Waltzer rights not afforded other stockholders. Waltzer returned the documents and checks and waived these extra rights.

Zemmol and Waltzer conversed by telephone on January 30, 1968. Waltzer denied at trial that he agreed to rescind the September 22nd agreement during that conversation. In early February, 1968, he refused to sign a document tendered by Transidyne which stated that he had so agreed. When Zemmol attempted as a witness to contradict Waltzer's story, the trial judge ruled the testimony inadmissible.

On February 27, 1968, the company's board of directors voted not to accept Waltzer's subscription. Plaintiff received notice of this decision on March 10, 1968. Transidyne sent a refund of $2,000 on March 26. Subsequently, the company's stock split five for one. This suit was filed on March 8, 1974.

The first issue to be considered is whether Waltzer's claim is barred by the statute of limitations. Transidyne argues that the Delaware three-year statute of limitations should apply. If the company is correct, Waltzer's claim is precluded because the alleged breach occurred in 1968 whereas suit was not filed until March 8, 1974. In the alternative, Transidyne contends that even if the court accepts plaintiff's contention that the Michigan six-year statute of limitations applies, Waltzer's action is still barred.

■ The general rule in diversity cases is that federal courts will follow the conflict of laws rules of the state in which the court sits. *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Since this case was tried in Michigan, we look to Michigan law. A Michigan conflicts statute provides:

> All actions and rights shall be governed and determined according to the law under which the right accrued, in respect to the limitations of such actions or right of entry. [M.S.A. § 27A.5869, M.C.L.A. § 600.5869 (1977).]

Since this contract to sell stock was made, if at all, in Michigan, rights under the contract arose under Michigan law. *Sheerin v. Steele,* 240 F.2d 797 (6th Cir.), *cert. denied,* 353 U.S. 938, 77 S.Ct. 816, 1 L.Ed.2d 760 (1957). Consequently, Michigan's six-year contract statute of limitations, M.S.A. § 27A.5807(8) [M.C.L.A. § 600.5807(8) ], controls this case.

█ The company's claim that Delaware's statute of limitations applies is unconvincing. Transidyne first argues that Delaware's statute controls because the situs of Transidyne's shares is in Delaware. In suits over title to, or transfer of, shares of stock, the law of the state of situs is said to apply. Assuming without deciding that Transidyne is correct, the point is inapposite because this suit is an action in damages for breach of contract rather than an action to give Waltzer title to shares of Transidyne stock.

Second, the company argues that its capacity to sue and be sued is governed by Delaware law. *See Fed.R.Civ. P.* 17(b). This point also is irrelevant because this case concerns not Transidyne's general capacity to be sued, but rather its potential liability in a particular case. Thus Michigan's six-year statute of limitations applies to this case.

The parties agree that under Michigan law, the statute began to run on the date of the alleged breach. *Cushman v. Avis,* 28 Mich.App. 370, 184 N.W.2d 294 (1970). The parties disagree, however, about the date on which the breach occurred. Transidyne argues that the breach, if any, occurred when its board of directors voted not to accept Waltzer's subscription on February 27, 1968. It claims that notice of the breach on March 10, 1968 was not required to activate the statute. Therefore, plaintiff's suit filed on March 8, 1974 was over a week late. On the other hand, Waltzer contends that after he tendered full payment for his shares on January 18, 1968, Transidyne had a reasonable time within which to deliver the stock.

He argues that this reasonable time had not yet passed on March 10, 1968. Thus the notice received on that date was a breach by anticipatory repudiation. If Waltzer is correct, his suit was timely filed by two days.

█ Under Michigan law, the date of accrual of a cause of action for statute of limitations purposes is a question of fact for the jury. *Tumey v. City of Detroit,* 316 Mich. 400, 411, 25 N.W.2d 571 (1947); *Flynn v. McLouth Steel Corp.,* 55 Mich.App. 669, 223 N.W.2d 297 (1974). Accordingly, we hold that Waltzer's suit was not barred as a matter of law and that the district court properly submitted to the jury the question of the date of the contract breach.

The district court erred, however, when it prohibited Zemmol to contradict Waltzer's testimony. Some additional facts must be stated. Zemmol is an attorney of record in this case who cross-examined Waltzer, the plaintiff's only witness, and who examined Diamond on direct. When Zemmol then tried to take the stand, plaintiff objected on the basis of Michigan Disciplinary Rule 5–102, which provides in part that when an attorney learns after undertaking employment that he ought to be called as a witness on contested matters, he should withdraw from his position as trial counsel. Zemmol had been listed as a witness on a January, 1976 pretrial order. Trial was not held until mid-1980.[1]

During discussion concerning Waltzer's objection, Transidyne represented that Zemmol would testify mainly about uncontested matters but that the testimony might overlap contested areas. Zemmol then suggested that improper testimony be stricken on a question-by-question basis. The trial judge overruled plaintiff's objection and permitted Zemmol to testify.

During this testimony, plaintiff objected to Zemmol's attempts to contradict Waltzer's version of the November, 1967 meeting and the January, 1968 telephone conver-

---

1. During discussion of the objection at trial, Waltzer maintained that he anticipated before trial only that Zemmol would testify about un-

contested matters. Hence plaintiff did not earlier object to Zemmol's taking the stand.

sation. Though these objections were sustained at unrecorded sidebar conferences, the trial judge's reasons for so deciding became apparent during argument regarding Transidyne's motion for mistrial. The rulings were based upon the court's desire not to permit ethical violations in open court and upon Federal Rule of Evidence (FRE) 403, *i.e.,* the testimony would result in cross-examination on the prejudicial side issue of Zemmol's ethical practices.

■ Waltzer contends that since Transidyne made no offer of proof about the content of Zemmol's testimony, the company is precluded from raising this issue on appeal. FRE 103(a)(2). Failure to make an offer of proof is excused, however, when the substance of the excluded evidence is apparent from the context within which the questions were asked. The record in this case clearly shows that the parties and the trial judge knew that Zemmol was about to dispute Waltzer's version of the investor's meeting and of the telephone conversation. Since the trial court was aware of, and the transcript discloses, the general nature of the evidence which was excluded, *Charter v. Chleborad,* 551 F.2d 246 (8th Cir.), *cert. denied,* 434 U.S. 856, 98 S.Ct. 176, 54 L.Ed.2d 128 (1977), this issue may be considered on appeal.[2]

■ Turning to the merits, FRE 601 provides that in civil actions in which state law supplies the rule of decision with respect to an element of a defense, "competency of witnesses shall be determined in accordance with State law." Zemmol's testimony was relevant to the defense of contract rescission. Since Michigan law supplies the rule of decision on this question, Zemmol's competency must be tested under Michigan law.

According to Michigan Rule of Evidence (MRE) 601:

Unless the Court finds after questioning a person that he does not have sufficient physical or mental capacity or sense of obligation to testify truthfully and under-

standably, every person is competent to be a witness except as otherwise provided in these rules.

Waltzer does not claim that Zemmol lacked sufficient physical or mental capacity or sense of obligation to testify truthfully; he only contends that the jury would have been unable to distinguish between Zemmol's dual roles had the latter testified about contested matters. Furthermore, while the Michigan rules prohibit judges (MRE 605) and jurors (MRE 606) to testify under certain circumstances, those rules do not render attorneys incompetent. Third, the Michigan cases clearly hold that although the practice is not encouraged, an attorney is competent to testify in cases in which he is an advocate. *Shapiro v. Wendell Packing Co.,* 366 Mich. 289, 294, 115 N.W.2d 87 (1962); *Jacobs v. Weissinger,* 211 Mich. 47, 49, 178 N.W. 65 (1920); *Schaible v. Michigan Mutual Insurance Company,* 116 Mich.App. 116, 122–24, 321 N.W.2d 860 (1982); *Osborn v. League Life Ins. Co.,* 20 Mich.App. 19, 21, 173 N.W.2d 724 (1969). This circuit has held likewise. *United Parts Mfg. Co. v. Lee Motor Products, Inc.,* 266 F.2d 20, 24 (6th Cir.1959). Consequently, Zemmol should have been allowed to testify both about what happened at the investors' meeting and about what was said by Waltzer and Zemmol on the telephone. Since this evidence would have been highly useful to the jury in deciding whether the September 22nd agreement was rescinded, the error was prejudicial. A new trial must be had.

■ This does not mean that Zemmol should have represented Transidyne at trial. At oral argument, Transidyne admitted that Zemmol knew at least four years before trial that he likely would have to testify. When an attorney knows that he will or ought to be called as a witness, he should withdraw from representation. *See, e.g., Universal Athletic Sales Co. v. American Gym,* 546 F.2d 530, 538 (3d Cir.1976); *Lau*

---

2. Plaintiff also asserts that Zemmol's testimony was cumulative because Diamond had already contradicted Waltzer's story. The jury, however, was presented with a credibility conflict between Diamond and Waltzer. Testimony corroborating Diamond's version therefore was important. The testimony in question cannot be excluded as cumulative evidence.

*Ah Yeu v. Dulles,* 257 F.2d 744, 746 (9th Cir.1958). Michigan's DR 5–102 also mandates this course of action. Since Zemmol knew well before trial that he likely would testify about contested matters and since he should have known that doing so would constitute an ethical violation,[3] he should have withdrawn as counsel.

One other issue deserves brief comment. Eight days before trial, Waltzer submitted a request under Rule 36 of the Federal Rules of Civil Procedure that Transidyne admit the accuracy of certain figures contained in copies of the National Monthly Stock Summary which were dated between October, 1969 and March, 1970. These figures purported to value registered Transidyne common shares during this period. Waltzer wished to introduce the summaries as part of his proofs on damages. The district court ruled that because Transidyne failed to file any response before trial, it admitted the accuracy of the figures.

This decision was error. Rule 36 grants a party 30 days to respond to requests for admission. Though the court may shorten this time by order, the record reveals that no such order was entered in this case. Hence, Transidyne did not admit the accuracy of the National Monthly Stock Summary. It should be understood that this holding does not implicate the question of the measure of damages to be used at the new trial. Nor does the court decide whether or not the value in late 1969 and early 1970 of registered Transidyne common shares is relevant to the question of Waltzer's damages. All we hold is that Transidyne did not admit the accuracy of the stock summaries by failing to respond within eight days.

Since the district court prejudicially erred in prohibiting Zemmol to testify concerning contested matters and in ruling that Transi-

dyne had admitted the accuracy of the National Monthly Stock Summary, the judgment below is vacated and the case is remanded for a new trial which shall be conducted in a manner not inconsistent with this opinion.

---

**3.** Transidyne argues that Zemmol did not breach the code of ethics because the case comes under an exception to DR 5–102 which permits an attorney to be both advocate and witness if withdrawing from representation would work a substantial hardship on the client because of the distinctive value of the lawyer to the client in the particular case. This claim is without merit. Attorney Steven Haffner entered this case on Transidyne's behalf on November 1, 1978, well over a year before trial. He conducted the direct examination of Zemmol. Since Transidyne would not have been prejudiced had Haffner represented the company, Zemmol's conduct does not fall within the exception to DR 5–102.