## WARD *v.* TOWNSHIP OF ALPINE.

1. RECOUPMENT—CONVERSION—CONTRACTS—BREACH OF CONTRACT—DAMAGES.

In an action against a township by the assignee of a contractor for the conversion of certain steel for concrete reinforcement used by him in the construction of a bridge which was rejected by defendant, and torn down and the steel used by it in a new bridge built according to the original plans and specifications, the court below was in error in rejecting defendant's claim of recoupment for damages in removing the defective bridge.

2. SAME—ASSUMPSIT—TORT.

In an action for conversion, the doctrine of recoupment is applicable whether the action is founded in tort or in contract; the right being the same.

3. SAME—NATURE OF CLAIM—WHEN APPLICABLE.
   Recoupment is not strictly limited to the exact provisions
   of the contract sued upon; it is sufficient that the counter-
   claims arise out of the same subject-matter, and that they
   are susceptible of adjustment in one action.

4. APPEAL AND ERROR—ERRONEOUS ASSUMPTION—RIGHT RESULT
   AFFIRMED.
   Where the evidence supported the finding of the court below
   that the damage to defendant resulting from the non-
   performance of a contract to build a bridge exceeded the
   value of certain steel converted by defendant, the judg-
   ment for defendant will be affirmed, although erroneously
   based upon the assumption that the steel imbedded in
   the concrete had no value.

Error to Kent; Brown, J. Submitted October 16,
1918. (Docket No. 80.) Decided April 3, 1919.

Assumpsit by M. Thomas Ward against the town-
ship of Alpine for the conversion of certain steel.
Judgment for defendant. Plaintiff brings error. Af-
firmed.

*M. Thomas Ward* (*Ellis & Ellis*, of counsel), *in
pro. per.*

*Earl F. Phelps,* for appellee.

STEERE, J. On December 10, 1915, M. Thomas
Ward, plaintiff, by M. Thomas Ward, plaintiff's at-
torney, commenced an action against defendant in the
circuit court of Kent county by filing and serving
a declaration charging defendant under the common
counts in assumpsit with being indebted on the first
day of November, 1915, to George LeVan in the sum
of $200, which indebtedness was averred to have
been assigned to plaintiff by said LeVan for a valu-
able consideration, on November 30, 1915, and defend-
ant though often requested had not paid the same or
any part thereof, to plaintiff's damage one thousand
dollars, and therefore he brought suit.

On request for a bill of particulars after entry of appearance by Earl F. Phelps, defendant's attorney, plaintiff "in proper person" furnished the same, informing defendant that the action was brought to recover the following demand:

```
"1915, October, steel ........................$170.00
 1915, October, Cartage and unloading............  6.00
 1915, October, Hand Rail ....................... 16.00
 1915, October, Hauling Hand Rail...............  2.00
                                                _____
                                                $194.00"
```

After being thus advised, defendant pleaded the general issue, with a lengthy notice of special defense that the work, labor and material furnished for which plaintiff's action was brought, if any, were done and furnished under a special contract in writing by which LeVan undertook to build a bridge for defendant, in which undertaking he failed miserably to defendant's injury and damage in the sum of $300 for which it made claim by way of recoupment.

On the trial of the case before the court without a jury the testimony developed complications which led the court to offer the following reflection, with which we do not disagree:

"This entanglement involves a good many different lines and ramifications. It probably would be difficult for a designing mind to get an entanglement with more avenues of approach or more alleys of escape, if you were getting up a knotty question to see if you could not somewhere trip somebody who claimed to be untrippable."

The court thereafter made a finding of facts with conclusions of law thereon holding that plaintiff could not recover. Proposed amendments by plaintiff to such findings were refused and defendant had judgment. Exceptions to the refusal to amend findings, conclusions, etc., were duly taken and the case re-

moved to this court for review on 26 assignments of error.

Most of the facts out of which the litigation arose are not in dispute. The subject-matter of the litigation was a quantity of steel for concrete reinforcement bought, but never paid for, by LeVan from the Concrete Steel Company of New York to be used by him in performance of his contract to construct a small concrete bridge over Mill Creek in a highway of the defendant township of Alpine. The price of this steel as purchased by LeVan from the concrete company was $170 which did not include a steel hand rail procured by him from the same source for, as he testified, "in the neighborhood of $15, $18, $20, somewhere along there." The plans and specifications for the proposed bridge were prepared and the contract let for its construction by a firm of civil engineers named Riser & Christ, representing the township in that transaction, and LeVan secured the contract which was dated November 24, 1914, by which he was to furnish all necessary tools, labor and material and construct the bridge in a good and workmanlike manner according to the plans and specifications, made a part of the contract, for $628 and complete the same before December 15, 1914. He thereafter entered upon the construction of the bridge and some time "during the winter of 1914-15" notified the township of its completion, just when is left to surmise. He testified that he built the bridge of cement, steel and gravel and said:

"I put this steel into the bridge and went on and finished up the bridge so that I thought it was finished. It could have a coat of whitewash in the spring; that is what it should have, is about all."

The township by its officers and the engineers who designed the bridge then inspected it and determined

that it had not been constructed in accordance with the plans and specifications, was of weak, unworkmanlike and faulty construction, hopelessly unsafe for public use and an obstruction in the highway which it was necessary to remove before a safe and proper bridge could be built, its greatest infirmity being in the quality of the cement, claimed to be weak, crumbling and interspersed with cracks. Acceptance was refused and LeVan so notified with demand that he comply with his contract by constructing a proper and safe bridge according to the plans and specifications. He took no steps to comply with the demand and after waiting until August 31, 1915, the township let a contract to one Robertson by the terms of which he was to tear down and remove out of the way the bridge LeVan had built and construct another in its place according to the same plans and specifications in relation to which LeVan had contracted. His price for the new bridge was $600, he to use the old railing, allowing $20 therefor, and the old reinforcing steel, allowing 1c per pound for the same, which LeVan had used in the rejected bridge he built. For tearing down and removing the LeVan bridge out of the way he was to receive $200 and of this work it was specified:

"4. In tearing down the present bridge span care must be taken to save as much as possible of the imbedded steel and the pipe railing, as it is the intention to use as much as possible of this material in the new bridge span.

"5. The concrete of the demolished span shall be broken up and deposited on the banks adjacent to the bridge as directed by the commissioner.

"6. The old steel must be thoroughly cleaned from all dirt and concrete, restraightened and if necessary rebent to the original shape."

The abutments to this bridge were not put in by LeVan, but by the township, and in the opinion of

the engineer explosives could not be used in removing the rejected bridge without affecting the abutments. In performance of his contract Robertson first entirely tore down the LeVan bridge in such manner as to not disturb the abutments, cleaning and straightening the old steel as he released it and laying it on the ground a short distance from the bridge "just out of the way." After the old bridge was entirely torn down and removed out of the way he built the new one in compliance with the terms of his contract, using 7,500 pounds of the old steel saved from .the LeVan bridge and the old railing, for which, as agreed in the contract, the township received a rebate of $95 on the contract price of $800 otherwise due him for tearing down the old bridge and constructing the new. It is found by the trial court, and not disputed, that LeVan was seasonably notified by defendant of the rejection of the bridge he built and twice requested to construct a bridge according to contract, the last demand being in writing with a time fixed in which to comply, to which he paid no attention; that the one he built was not in compliance with the plans and specifications of his contract but was an obstruction in the highway which it was necessary to remove before the Robertson bridge could be constructed, and that the price paid by the township for removing the same was reasonable. So far as the record discloses LeVan's first activity in connection with this matter subsequent to notice that his bridge had been rejected and demand that he comply with his contract was to assign his rights in the old reinforcement steel to plaintiff after Robertson's contract was completed and the steel had been securely imbedded in the concrete of the new bridge. Plaintiff then brought this action against the township for conversion of LeVan's steel, waiving the tort, however, and suing in assumpsit, as is permissible.

The trial court held defendant's claim for recoup-

ment could not be maintained because it did "not grow out of the contract under which plaintiff brings this suit." Having found it admitted that defendant never accepted the LeVan bridge and after due notice and demand had caused the steel and cement of which it was constructed to be removed because an obstruction to the erection of a proper and safe bridge, and that it authorized Robertson to use the steel placed by LeVan in the demolished bridge, the court expressed the view that "even though the bridge was not accepted by the township, the bridge and all its component parts became affixed to the land and a part of a highway, and plaintiff's assignor had no interest or property right in said bridge" except as he might use any suitable portion of it in carrying out his contract according to its terms, and "must rely entirely upon the contract for his compensation to recover for building the bridge"; that after installing the same in the public highway he had no right, in case of dispute with the township authorities, "to go upon the public highway and remove therefrom the bridge," which was "a public improvement," erected under contract with the township. After further discussion of the case in that respect the court concluded that, "If the property belonged to the township as above indicated the plaintiff's case must fail," and proceeded to discuss the theory of conversion, qualifiedly adopting it as follows:

"Under the testimony in the case the court finds that the defendant, having removed the first bridge, which was composed of steel and cement, from the place where plaintiff's assignor built it, the steel being extracted from cement and laid near the place where the second bridge was built, and being used in the construction of the second bridge with the consent of defendant, and it being the intent of defendant from the time of the beginning of the removal of the first bridge to the time the second bridge was constructed

204—Mich.—40.

to use this steel in construction of the second bridge, that the conversion, if there was such conversion by defendant of the steel in question, was committed at the time defendant first handled the steel, which would be at the time defendant removed the steel from the cement bridge."

Having so determined the time of conversion, if any, the court in conclusion held that not only had plaintiff failed to prove the market value of the steel at the time it was converted while yet imbedded in the cement of the LeVan bridge, but that it was shown by defendant's evidence to be without value in its then condition; and on that theory entered judgment for defendant.

One of the "ramifications" in this "entanglement," to which no reference appears in the court's finding of facts and conclusions of law, is that soon after this action was brought and before issue was joined defendant filed a bill of interpleader on the chancery side of the court giving at length its version of the history of this bridge matter up to and including the commencement of this action, alleging that LeVan himself, Gordon C. Dudley as his bondsman, M. Thomas Ward as his assignee, and the Concrete Steel Company, all of whom are made defendants, have each demanded from the township ("your orator") pay for this steel, saying amongst other things:

"Said steel that was put into the said bridge built by the said G. F. LeVan went into the second bridge constructed by the other contractor, and your orator received the benefit thereof, and your orator is ready and willing to pay to the proper person whatever sum said steel is reasonably worth, which steel your orator is informed and believes is worth at a fair valuation the sum of one hundred and seventy-one ($171.00) dollars, and your orator is willing to pay this amount for said steel to whomsoever is entitled thereto."

The bill contained the customary prayer for relief

under its allegations, and asked a preliminary injunction restraining M. Thomas Ward from further prosecuting this action, which was granted. The bill was signed in behalf of the township and sworn to by Louis F. Cordes, its supervisor, who was by statute its agent for transaction of all legal business, and the party upon whom all process against it should be served (1 Comp. Laws 1915, § 2115).

M. Thomas Ward thereafter moved before the chancery court for dismissal of the bill and dissolution of the injunction against him, which motion was granted. The grounds of said motion and reasons of the court for dismissing the bill are not disclosed by this record, but the township took no appeal therefrom, and thereafter pleaded in this action as before stated.

Plaintiff filed proposed amendments to the findings of the court under Circuit Court Rule No. 45 embodying the salient facts as to defendant's bill of interpleader and its contents, none of which were granted, exception was duly taken and error is assigned thereon. As those matters are of record and undisputed, plaintiff was entitled to his proposed findings to the extent any of them are material to the issue.

Plaintiff says of defendant's rather peculiar and unsuccessful excursion into the field of interpleader that, "The township of Alpine had a right to file a plea with a notice of recoupment in this case or to file a bill of interpleader. But our contention is that he had no right to do both," and it is argued that having by its attempted interpleader declared itself the innocent stakeholder of $171 for the value of this steel claimed by four different parties made defendants, of which plaintiff was one, it cannot thereafter file in this case a plea of denial and notice of recoupment, claiming that money and denying plaintiff's right to it as assignor of the owner of the steel.

It seems self-evident that the theory upon both the

facts and law by which the court disposed of the case is out of harmony with the allegations and theory of defendant's sworn bill of interpleader filed as the commencement of a suit in equity; but plaintiff declined to plead issuably in that suit and successfully took steps to head off that attempted "alley of escape" by a technical motion presumably in the nature of a demurrer, obtaining an adjudication that defendant's bill was not well founded, was insufficient in law to demand answer and should be dismissed—in effect that the bill of interpleader was a nullity and, as between these parties, could in no wise affect the orderly course of this action at law.

Thus relegated to its defense in this case it remained for defendant to plead herein as it might be advised. It had not before pleaded, issuably or otherwise, and, held to the issues tendered by plaintiff's declaration in assumpsit under the common counts, it pleaded the general issue with notice of recoupment. Under the testimony in this case strengthened by the allegations in its dismissed bill of interpleader, which are competent evidence, it is not only manifest that defendant was not in a position to deny LeVan's ownership of this steel, but that he had in fact bought and owned it at the time he put it into the rejected bridge he built for defendant. That his vendor had granted him credit and he had not yet paid for it was no legal concern of defendant so far as this record discloses.

Though adopting the conclusion that there was a conversion, qualified by the previously expressed view that LeVan had probably lost all rights in this steel by so building it into his bridge that it "became affixed to the land and a part of the highway," and if so "plaintiff's case must fail," the trial court determined the conversion, if any, took place "at the time defendant removed the steel from the cement bridge," which LeVan had constructed, and that it was without

value at that time in its then condition. Against this plaintiff strenuously contends and argues that defendant converted the property when it took it from the side of the highway and put it into the new bridge, at which time it is shown to have been of substantially the value claimed.

To follow out the various arguments and theories as to when and how often this steel changed back and forth from personal property to real estate, or when and why or how.the conversion, if any, took place, as mooted by the contingent conclusions of the trial court might, as the court suggested, involve an "entanglement" of questions which, in the language of Imlac, have "long divided the wise and perplexed the good" and we see no reason to pursue them, for we think the court erroneously rejected defendant's claim of recoupment and the exact time when defendant converted LeVan's steel to its own use is of minor importance. He purchased this steel to use in the construction of a bridge for defendant over Mill Creek which he had contracted to build. He used it for that purpose. The township rejected the bridge he built because imperfect, unsafe and not according to contract, notifying him of the rejection and its reasons. After due demand that he perform and reasonable time therefor the township did what he under his contract should have done. It tore down the defective and unsafe bridge and built another of the same kind, according to the same plans and specifications as that he had agreed to build. In doing so it saved and used some of the old material which he had furnished for and used in the first bridge in part performance of his contract.

While plaintiff claims a tortious conversion he has waived the tort and sued in assumpsit founding his action upon a claim of *quantum meruit,* for the value of material furnished by his assignor under and used

in an attempt to perform his contract with defendant to build a specified bridge, for the construction of which defendant used the material after he had failed to fully perform and abandoned the work; but had plaintiff's action sounded in tort for a conversion, recoupment could have been interposed with equal force.

"That term is expressive of a right of a defendant to deduct or abate from the plaintiff's damages any right of action which defendant may have, growing out of the same transaction, founded either in tort or in contract; but the right is the same, whether expressed by one term or another, or claimed by a plaintiff or defendant." *Bancroft* v. *Peters,* 4 Mich. 619.

Recoupment is not strictly limited to the exact provisions of the contract involved, or sued upon, but is said in Waterman on Set-Off and Recoupment (2d Ed.), p. 480, to be contradistinguished from set-off in three essential particulars:

"1st. In being confined to matters arising out of, and connected with, the transaction or contract upon which the suit is brought; 2d. In having no regard to whether or not such matter be liquidated or unliquidated; and 3d. That the judgment is not the subject of statutory regulation, but controlled by the rules of the common law. * * * It is sufficient that the counter-claims arise out of the same subject-matter, and that they are susceptible of adjustment in one action."

The scope of such defense was early recognized by this court in *Ward* v. *Fellers*, 3 Mich. 282, where recoupment is discussed at some length. The opinion says of its application:

"It is sufficient that the counter-claims arise out of the same subject-matter, and that they are susceptible of adjustment in one action."

In *Allen* v. *McKibbin,* 5 Mich. 449, which holds recovery might be had on *quantum meruit* for part performance of a non-apportionable contract, the basis

of recovery being a new implied agreement deducible from delivery and acceptance of some valuable service or thing, the court said in discussing the defense that no question could be raised as to the right to recoupment "as the damages, if any, arose out of the same transaction."

As assignee, plaintiff is entitled to recovery only and just as LeVan, his assignor, might had no assignment been made. *Howell* v. *Medler*, 41 Mich. 641.

The trial court found, with abundant supporting evidence, that the reasonable cost and expense to defendant in removing the defective LeVan bridge out of the way, and cleaning and straightening the steel found imbedded in it, was the sum of $200. This was distinctly an item of damages resulting to defendant from LeVan's nonperformance of his contract, and exceeded the amount claimed in plaintiff's bill of particulars, or any proven value of the steel used by defendant and for which it was holden. Clearly the counter claims of these parties arose out of the same subject-matter, or transaction, and were susceptible of adjustment in one action.

Though by different avenues of approach, which is immaterial, the right result was reached by the trial court and its judgment is affirmed.

BIRD, C. J., and OSTRANDER, MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.