*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DOCK FARISH, KEBEH GIBSON, MILLIE NICHOLS, on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs-Appellants,

v

DEPARTMENT OF TALENT AND ECONOMIC DEVELOPMENT,

Defendant-Appellee,

and

TALENT INVESTMENT AGENCY, UNEMPLOYMENT INSURANCE AGENCY, DIRECTOR DEPARTMENT OF TALENT AND ECONOMIC DEVELOPMENT, DIRECTOR TALENT INVESTMENT AGENCY, and ACTING DIRECTOR UNEMPLOYMENT INSURANCE AGENCY,

Defendants-Appellees.

FOR PUBLICATION
March 18, 2021
9:00 a.m.

No. 350866
Court of Claims
LC No. 17-000035-MZ

Before: RIORDAN, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

SHAPIRO, J.

The question before us in this case is whether the Michigan Unemployment Insurance Agency (UIA) may deduct sums from a recipient's present benefits in order to collect penalties and interest assessed because of a prior overpayment. We conclude that it may not. However, we conclude that plaintiffs' conversion and other damage claims fail and that they may only obtain declaratory and injunctive relief. We remand for entry of orders providing such relief.

I. BACKGROUND

The Michigan Employment Security Act (MESA), MCL 421.1 *et seq.*, provides that if an individual is determined to have obtained benefits to which they are not entitled, the agency may recover a sum equal to the overpayment plus interest in one of three ways: "deduction from benefits or wages payable to the individual, payment by the individual in cash, or deduction from a tax refund payable to the individual . . . ." MCL 421.62(a). A deduction from benefits "is limited to not more than 50% of each payment due the claimant," MCL 421.62(a), but that cap does not apply when the restitution sought by the agency results from the claimant's "intentional false statement, misrepresentation, or concealment of material information," MCL 421.62(b). MESA authorizes the assessment of penalties for such conduct. See MCL 421.54(b).

At the time they brought suit, plaintiffs' current unemployment benefits were being deducted in whole or in part to recoup prior overpayments, penalties, and interest. Plaintiffs claimed that the deductions violated state law as set forth in MCL 421.30[1] and MCL 421.62, as well as federal law governing state unemployment systems that receive federal funds. Defendants moved for summary disposition, arguing that the deductions from plaintiffs' benefits were authorized by the aforementioned state statutes and not precluded by federal law. The Court of Claims dismissed plaintiffs' suit in its entirety and plaintiffs appealed in *Farish v Dep't of Talent & Economic Dev (Farish I)*, unpublished per curiam opinion of the Court of Appeals, issued December 11, 2018 (Docket No. 341350). In that first appeal, we affirmed the trial court's conclusion that state law was not violated, and also affirmed dismissal of the procedural due process claim, a standalone count for equitable relief[2] and all claims against the individual defendants. *Id.* at pp 2-7.

However, we reversed dismissal of plaintiffs' claim that deducting penalties and interest violated federal law, specifically 42 USC 503 of the Social Security Act, and therefore constituted conversion. The Court of Claims had determined that the deduction of penalties and interest from plaintiffs' unemployment benefits did not violate the federal statute. However, we remanded for the court to consider certain administrative guidance promulgated by the United States Department

---

[1] MCL 421.30 provides:

All rights to benefits shall be absolutely inalienable by any assignment, sale, garnishment, execution or otherwise, and, in case of bankruptcy, the benefits shall not pass to or through any trustees or other persons acting on behalf of creditors: Provided, That this section shall not prohibit the use of any remedy provided by law insofar as the collection of obligations incurred for necessaries furnished to the recipient of such benefits or his dependents during the time when such individual was unemployed is concerned.

[2] In our prior opinion, we explained that equitable relief was a remedy, not a cause of action, and so summary disposition of plaintiffs' equitable-relief claim was proper. *Farish I*, unpub op at 7. This does not mean, however, that plaintiffs are foreclosed from an equitable remedy if entitled to such relief under a different cause of action.

of Labor, indicating that such deductions were impermissible under federal law, so states that deduct past interest and penalties from future benefits (as opposed to only the actual overpayments) may not be certified for federal assistance in funding their unemployment programs. See *id*. at 5-6. On remand, the court again concluded that the statute was unambiguous and thus that the Department of Labor's interpretation of the statute was irrelevant and entitled to no deference. The court also ruled that governmental immunity barred the conversion claims.[3] Plaintiffs again appealed to this Court.[4]

## II. ANALYSIS

### A. INTERPRETATION OF 42 USC 503

The federal Social Security Act governs various social welfare programs, including state unemployment compensation, 42 USC 501 through 506. For all programs, the federal government provides funding for the states on the condition that the states meet and follow certain requirements. The requirements to receive federal funding for unemployment insurance are set forth in 42 USC 503(a). First, the Secretary of Labor may not certify payment unless the state's law provides administrative methods "reasonably calculated to insure full payment of unemployment compensation when due." 42 USC 503(a)(1). In addition, all money withdrawn from a state unemployment fund must, with certain stated exceptions, be expended "in the payment of unemployment compensation . . . ." 42 USC 503(a)(5). The exception relevant to this appeal provides "[t]hat amounts may be deducted from unemployment benefits and used to repay overpayments as provided in subsection (g)[.]" 42 USC 503(a)(5). In turn, subsection (g) provides in pertinent part:

---

[3] We review de novo grants of summary disposition. *Genesee Co Drain Comm'r v Genesee Co*, 309 Mich App 317, 324; 869 NW2d 635 (2015). The Court of Claims granted summary disposition of plaintiffs' 42 USC 503 claim under MCR 2.116(C)(8) (failure to state a claim). Under subrule (C)(8), we accept all well-pleaded factual allegations as true to determine the legal sufficiency of the complaint. See *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). Questions of statutory interpretation are also reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). The goal when interpreting federal statutes is to give effect to Congress's intent. *Johnson v Johnson*, 329 Mich App 110, 119; 940 NW2d 807 (2019). Statutes are reviewed "as a whole, reading individual words and phrases in the context of the entire legislative scheme." *Ronnish Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016). "Statutory language should be construed reasonably, keeping in mind the purpose of the act." *People v Zitka*, 325 Mich 38, 49; 922 NW2d 696 (2018) (quotation marks and citations omitted). When reviewing a motion under MCR 2.116(C)(7) (governmental immunity), the parties may introduce evidence to support their claims or defenses, and "[t]he contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant." *Maiden*, 461 Mich at 119.

[4] The Center for Civil Justice filed an amicus brief in support of plaintiffs' brief regarding the interpretation of 42 USC 503.

A State shall deduct from unemployment benefits otherwise payable to an individual *an amount equal to any overpayment* made to such individual under an unemployment benefit program of the United States or of any other State, and not previously recovered. The amount so deducted shall be paid to the jurisdiction under whose program such overpayment was made. Any such deduction shall be made only in accordance with the same procedures relating to notice and opportunity for a hearing as apply to the recovery of overpayments of regular unemployment compensation paid by such State. [42 USC 503(g)(1) (emphasis added).]

Defendants concede that the ordinary meaning of "overpayment" does not include penalties and interest, i.e., the statute does not require or expressly authorize deductions for those amounts. Defendants argue, however, that deductions for penalties and interest are nevertheless permissible because they are not explicitly prohibited by 42 USC 503(g). Plaintiffs, on the other hand, maintain that 42 USC 503(g)'s silence on deductions for penalties and interest renders the statute ambiguous and that we should therefore defer to the Department of Labor's stated position on this matter. As set forth in our prior opinion, in an Unemployment Insurance Program Letter sent to all state employment security agencies in 1989 (UIPL 45-89),[5] the Department of Labor advised that permissible deductions from payment of unemployment compensation did not include penalties or interest:

5. **Specific Situations in which Deductions May or Must be Made from Unemployment Compensation.** A State law may (or must) include provision for deducting and withholding any sum from compensation payable to an individual only if specifically permitted (or required) by Federal law.[6] These exceptions are limited to the following circumstances:

a. If the claimant is legally liable to repay an overpayment of compensation made from the State's unemployment fund, that amount owed may be deducted from compensation currently payable from such fund under State law. This is permissible because the amount previously overpaid is tantamount to a prepayment of compensation currently due the claimant.

\* \* \*

---

[5] Although issued in 1989, UIPL No. 45-89 remains active. See United States Department of Labor, Active Unemployment Compensation Program Letters and Active Unemployment Insurance Program Letters as of July 28, 2016 <https://wdr.doleta.gov/directives/attach/TEN/TEN_07-16_Attachment_E_Acc.pdf> (accessed March 9, 2021).

[6] When 42 USC 503(g) was enacted in 1986, states were permitted, but not required, to make deductions to recoup overpayments. PL 99-272, § 12401(a)(2); 100 Stat 82. It became mandatory in 2012 when Congress substituted "shall" for "may" in the original provision. PL 112-96, § 2103(a); 126 Stat. 161.

*Deductions to recover overpayments are limited to the offset of the overpayment itself. Offset may not be used to recover any additional interest or penalties due under State law as these additional amounts do not constitute a prepayment of compensation.* Further, the offsetting of past due contributions, penalty, interest or costs incurred while the claimant was an employer is not permitted. See the Secretary's decision in the Minnesota conformity proceedings, dated December 16, 1988, and transmitted to the States by UIPL 25-89. [Emphasis added.]

Plaintiffs maintain that UIPL 45-89 is entitled to deference under *Chevron USA v Natural Resources Defense Council, Inc*, 467 US 837; 104 S Ct 2778; 81 L Ed 2d 694 (1984), the seminal decision from the United States Supreme Court concerning judicial deference to a federal agency's interpretation of a statute. *Chevron* presents a two-step inquiry. The first step is to determine "whether 'Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" *Dep't of Labor & Economic Growth, Unemployment Ins Agency v Dykstra*, 283 Mich App 212, 223; 771 NW2d 423 (2009), quoting *Chevron*, 467 US at 842-843. If, however, " 'the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.' " *Dykstra*, 283 Mich App at 224, quoting *Chevron*, 467 US at 843.

Aside from whether the statute is ambiguous, defendants argue that UIPLs are not entitled to *Chevron* deference. Plaintiffs disagree, but alternatively argue that even if *Chevron* does not apply, we should defer to UIPL 45-89 under *Skidmore v Swift & Co*, 323 US 134; 65 S Ct 161; 89 L Ed 2d 124 (1944). Per *Skidmore*, an agency interpretation that does not "carry the force of law" is nonetheless "eligible to claim respect according to its persuasiveness." *United States v Mead Corp*, 533 US 218, 221; 121 S Ct 2164; 150 L Ed 2d 292 (2001). See also *Air Brake Sys, Inc v Mineta*, 357 F3d 632, 643 (CA 6, 2004), quoting *Skidmore*, 323 US at 140 ("Federal courts give respectful consideration to authoritative interpretations that lack the force of law, but that nonetheless have the 'power to persuade.' "). Accord *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103; 754 NW2d 259 (2008) (explaining that, while not binding, state agency interpretations are entitled to "respectful consideration" and should only be overruled for "cogent reasons.").

To begin, we agree with the parties that 42 USC 503(g) is silent on the issue at hand. 42 USC 503(g) mandates that states recoup overpayments through deductions, but it does not expressly preclude a state from making deductions for other amounts. Viewed by itself, 42 USC 503(g) could be read to mean, as the Court of Claims determined, that although states are required to recover overpayments through deductions, they have discretion whether to also recoup penalties and interest in that manner. However, viewing 42 USC 503 as a whole as opposed to 42 USC 503(g) alone, we conclude that the statute unambiguously precludes states from using unemployment funds to satisfy penalties and interest assessed against benefit recipients. Although 42 USC 503 is silent as to deductions for penalties and interest, it remains the case that in the

absence of an applicable exception or express authorization,[7] deductions for penalties and interest violate 42 USC 503(a)(5)'s general directive that unemployment funds must be used to pay benefits. See *Grand Rapids Motor Coach Co v Mich Public Serv Comm*, 323 Mich 624, 634; 36 NW2d 299 (1949) ("[E]xemptions in a statute are carefully scrutinized and not extended beyond their plain meaning."); *Huggett v Dep't of Natural Resources*, 232 Mich App 188, 194; 590 NW2d 747 (1998) ("Statutory exceptions operate to restrict the general applicability of legislative language and are strictly construed.").

Indeed, this is the precise reasoning behind the Secretary of Labor's decision that is cited in the relevant paragraph of UIPL 45-89. In 1987, Minnesota enacted a statutory provision allowing the deduction of interest and penalties from unemployment benefits otherwise made to individual claimants, for the purpose of recouping the value of those claimants' unpaid obligations to the state's unemployment fund that the claimants failed to pay when they had been employers. The United States Department of Labor challenged this provision as violating the Social Security Act's requirement that unemployment benefits be paid in full when due. Minnesota received a hearing before an Administrative Law Judge (ALJ) and maintained that the contested deductions were authorized by 42 USC 503(g). The ALJ determined that the Minnesota statute impermissibly constituted a levy on unemployment compensation that exceeded the narrow statutory exceptions in 42 USC 503(a)(5). The Secretary of Labor adopted the ALJ's recommendation:

> [U]nder section 303(a)(5) of SSA,[8] all money withdrawn from the unemployment fund must be used in payment of unemployment compensation. . . . Section 303(a)(1) of the SSA requires that a state unemployment compensation law provide for such methods of administration as will ensure full payment of unemployment compensation when due. *Certain exceptions to the requirement that funds be used exclusively in the payment of unemployment compensation are statutorily provided but none of these are applicable here*.

> [The Minnesota law at issue] permits the deduction and withholding of up to 50 percent of an individual's unemployment compensation payment for unpaid contributions, *interest*, *penalties* and costs for which the individual has been determined to be liable. Thus, an unemployed claimant would not receive in hand the full amount of his or her cash benefits if the claimant owed contributions to the unemployment fund from a prior period when the claimant had been an employer. The question, therefore, arises whether the reduction in the claimant's cash benefits for the purpose of recouping contribution owed conforms to the Federal statutory prescriptions as to use of unemployment fund monies.

---

[7] In addition to the exceptions stated in 42 USC 503(a)(5), other subsections in 42 USC 503 allow or require deductions from benefits but none is relevant here. See 42 USC 503(d)(2)(B) (allowing for deductions to recover uncollected overissuance of supplemental nutrition assistant program benefits); 42 USC 503(e)(2)(A)(iii) (requiring deductions to recover unpaid child support).

[8] 42 USC 503 is section 303 of the Social Security Act.

The ALJ's recommendation, that I find Minnesota's recoupment provision in nonconformity with Federal law, is based on the ALJ's analysis of the applicable . . . SSA provisions. Specifically, the ALJ concluded that the statutory language is *clear and unambiguous*, and that the legislative history and historical application of the . . . SSA provisions support the limiting of the use of unemployment fund monies to cash benefits for unemployed claimants or to certain other specifically stated expenditures. *The ALJ then found that Minnesota's recoupment provision involves the constructive withdrawal of funds for a purpose other than permitted by law and resulted in the unemployed claimant failing to receive full benefits when due.*

Upon review of the entire record in this case, I agree with the analysis and conclusion of the administrative law judge. [USDOL Case No. 88-UIA-9 (emphasis added).]

We agree with the Secretary of Labor's conclusion that 42 USC 503 unambiguously precludes the deduction of penalties and interest from current benefits. Alternatively, even if the statute was ambiguous, we would find that the Secretary's reasoning is persuasive and is at least entitled to *Skidmore* deference. We recognize that UIPL 45-89 cites the Minnesota proceedings in support of the statement that deductions cannot be made to recover unpaid contributions, penalties, and interest assessed against the recipient as an employer. However, the reasoning set forth in the Secretary's decision applies with equal force to the general principle announced in UIPL 45-89 that deductions must be limited to recovery of the overpayment itself, and an offset may not be made to recover penalties and interest. It makes no difference that the Minnesota law allowed for recoupment of penalties and interest related to unpaid contributions as an employer rather than past benefits obtained because of an intentionally false statement or concealment of material information. The point is that *any* deduction to recover penalties and interest is impermissible because it is not authorized by 42 USC 503 and therefore violates the statute's starting point that all amounts withdrawn from the unemployment compensation fund must be used for payment of benefits.[9]

---

[9] The dissent relies on 42 USC 503(m), which provides:

In the case of a covered unemployment compensation debt (as defined under section 6402(f)(4) of the Internal Revenue Code of 1986) that remains uncollected as of the date that is 1 year after the debt was finally determined to be due and collected, the State to which such debt is owed shall take action to recover such debt under section 6402(f) of the Internal Revenue Code of 1986. [42 USC 503(m).]

In turn, 26 USC 6402(f) requires the Secretary of Treasury to deduct a "covered unemployment compensation debt" from a taxpayer's tax refund and pay that amount to the state, 26 USC 6402(f)(1), and it defines covered unemployment compensation debt to include "any penalties and interest assessed" on "past-due debt for erroneous payment of unemployment compensation due to fraud . . . ." 26 USC 6402(f)(4)(A) and (C). Thus, if the state does not collect penalties and

Finally, our conclusion is bolstered by the fact that 42 USC 503(a)(11) requires states to assess a penalty against an individual when a payment from the unemployment fund is found to have been made because of fraud, but there is no corresponding provision allowing deductions for such penalties.[10]  Given the express authorizations in 42 USC 503 allowing for deductions, we presume that Congress was acting intentionally when it declined to allow or mandate deductions to recover penalties.  See *Russello v United States*, 464 US 16, 23; 104 S Ct 296; 78 L Ed 2d 17 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quotation marks and citation omitted).  See also *People v Miller*, 498 Mich 13, 24-25; 869 NW2d 204 (2015) ("If the Legislature had intended [the proffered interpretation inferring authorization for multiple punishments], it clearly knew how to do so" given "specific authorization" for multiple punishments elsewhere in the statute).

To summarize, we conclude that 42 USC 503 precludes the UIA's practice of deducting penalties and interest from unemployment benefits.  Where the federal government contributes to a state's unemployment fund, the fund may only be used to pay unemployment compensation unless an exception applies or express authorization for the deduction exists.[11]  And no

---

interest relating to past benefits erroneously paid because of fraud within a year, it must seek recovery under 26 USC 6402(f), i.e., through interception of the recipient's federal tax refund. From these statutory provisions allowing offset from federal tax refunds, the dissent infers authorization for deduction of penalties and interest from current unemployment benefits. How the dissent reaches this conclusion is mystifying. Put simply, authorization to offset penalties and interest from tax refunds does not equate to authorization to deduct the same amounts from current benefits owed to unemployment compensation recipients. The dissent suggests that allowing recoupment through one method but not the other is unreasonable. Congress apparently disagreed. We also note that we ordered the parties to provide supplemental briefs on 26 USC 6402(f)(4)(C), *Farish v Dep't of Talent & Economic Dev*, unpublished order of the Court of Appeals, entered July 8, 2020 (Docket No. 350866), and they filed a *joint* supplement brief agreeing that it is not relevant to the interpretation of 42 USC 503. While we are not bound by the parties' stipulation of law, for the reasons stated we agree that 26 USC 6402(f) is not relevant to the issue before us.

[10] The dissent concludes that the lack of an express authorization for deduction of penalties is irrelevant. We disagree. Given that Congress authorized states to assess penalties, it could have easily provided that states could deduct penalties from current benefits, as it did in 42 USC 503 for numerous other amounts. That there is no express authorization for deduction of penalties is telling.

[11] The dissent acknowledges that 42 USC 503 generally requires that the money withdrawn from an unemployment fund be used in the payment of unemployment compensation and that the statute contains multiple provisions expressly allowing or mandating deductions from benefits. Nonetheless, the dissent concludes that a deduction for penalties and interest does not require express authorization "because such a deduction is inherent within the unemployment statutory scheme itself." In other words, the dissent reads language into an unambiguous statute, contrary to the rules of statutory interpretation. See *Michigan Ass'n of Home Builders v City of Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019). The dissent also notes that recovered penalties are

authorization for deducting penalties or interest is contained in the statute. Our reasoning is consistent with UIPL 45-89 and the Secretary's decision in the Minnesota conformity proceedings. We conclude that the statute is unambiguous and, to the degree that conclusion may be questioned, that UIPL 45-89 is entitled to *Skidmore* deference. Accordingly, we need not address whether UIPLs are entitled to *Chevron* deference.

## B. CAUSE OF ACTION TO ENFORCE 42 USC 503

We agree with defendants, however, that plaintiffs do not have a private cause of action under 42 USC 503 for money damages or remittance of the improper deductions, but conclude that plaintiffs may seek declaratory and injunctive relief.

As an initial matter, we disagree with plaintiffs that we are precluded from considering this question under the law-of-the-case doctrine. "The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue." *New Props, Inc v George D Newpower, Jr, Inc*, 282 Mich App 120, 132; 762 NW2d 178 (2009). "The law of the case doctrine applies only to questions actually decided in the prior decision and to those questions necessary to the court's prior determination." *Kalamazoo v Dep't of Corrections*, 229 Mich App 132, 135; 580 NW2d 475 (1998).

In its first opinion granting defendants summary disposition, the Court of Claims determined that plaintiffs had an implied cause of action to enforce 42 USC 503, relying on federal caselaw to that effect. As an alternative ground for affirmance in the first appeal, defendants maintained that plaintiffs did not have a cause of action under 42 USC 503. See *Middlebrooks v Wayne Co*, 446 Mich 151, 166 n 41; 521 NW2d 774 (1994) (a party may present a preserved "alternative ground for affirmance."). We did not address the cause-of-action issue and instead remanded for consideration of the Department of Labor's administrative guidance interpreting 42 USC 503. Contrary to plaintiffs' argument, that result did not impliedly determine that they had a cause of action and resolution of that issue was not necessary to our prior determination.

---

deposited into the unemployment fund, and so allowing deductions for penalties does not divert funds from the payment of unemployment compensation. This argument overlooks, however, that 42 USC 503 is concerned not only with using funds for proper purposes but also insuring that recipients receive "full payment of unemployment compensation when due," 42 USC 503(a)(1), which counsels against implying authorization for deductions. Finally, the dissent observes that no federal or state appellate court has relied on UIPL 45-89 for the proposition that states may not make deductions for penalties and interest. We presume this is because other states have followed the Department of Labor's unequivocal directive that "[o]ffset may not be used to recover any additional interest or penalties due under State law," UIPL 45-89, and so the issue has not arisen until now. In any event, we are aware of no authority—administrative or otherwise—consistent with the dissent's view that such deductions are permitted.

Turning to the merits, plaintiffs identify federal authority holding that there is an implied private cause of action under 42 USC 503.[12]  See *Gann v Richardson*, 43 F Supp 3d 896, 901-904 (SD Ind, 2014); *Shaw v Valdez*, 819 F2d 965, 966 (CA 10, 1987); *Kelly v Lopeman*, 680 F Supp 1101, 1105-06 (SD Ohio, 1987); *Brewer v Cantrell*, 622 F Supp 1320, 1322-1323 (WD Va, 1985), aff'd without a published opinion 796 F2d 472 (CA 4, 1986).  Although the exact basis for allowing private litigants to enforce 42 USC 503 is unclear, the United States Supreme Court "has consistently assumed that it is a proper remedy." *Jenkins v Bowling*, 691 F2d 1225, 1228 (CA 7, 1982).  For instance, in *California Dep't of Human Resources Dev v Java*, 402 US 121, 125; 91 S Ct 1347; 28 L Ed 2d 666 (1971), the United States Supreme Court entertained a private class action lawsuit challenging a state's refusal to pay unemployment benefits while an administrative appeal was pending.  The Court concluded that the state law "must be enjoined because it is inconsistent with § 303(a)(1) of the Social Security Act." *Id*. at 135.  See also *Ohio Bureau of Employments Servs v Hodory*, 431 US 471; 97 S Ct 1898; 52 L Ed 2d 513 (1977) (furloughed employees obtained declaratory and injunctive relief in the district court that state law conflicted with the Social Security Act, and the Supreme Court reversed on the merits).

Given the federal caselaw holding that a private cause of action exists under 42 USC 503, we agree with the Seventh Circuit that this issue is "too well settled to be questioned by us . . . ." *Jenkins*, 691 F2d at 1228.  That said, we agree with defendants that these cases have only allowed the plaintiffs to seek declaratory and injunctive relief.  And while plaintiffs ask that we follow this caselaw, they do not explain why it should be extended to allow for a cause of action for money damages.  Nor do plaintiffs argue that they have an enforceable "right" under 42 USC 503 such that they may proceed under 42 USC 1983.[13]  See *Blessing v Freestone*, 520 US 329, 340-341; 117 S Ct 1353; 137 L Ed 2d 569 (1997).  For these reasons, we see no basis to infer a cause of action under 42 USC 503 for money damages or a remittance of improperly withheld funds.

Accordingly, plaintiffs do not have a money damages remedy for the violation of 42 USC 503, but they can seek declaratory and injunctive relief as to whether defendants may continue to reduce benefits to collect interest and penalties.  Indeed, plaintiffs could seek that relief even if they did not have an implied cause of action under 42 USC 503.  In *Lash v City of Traverse City*, 479 Mich 180, 196; 735 NW2d 628 (2007), the Supreme Court held that the plaintiff-employee did not have an implied cause of action for damages against the employer for violating a statute prohibiting governmental entities from imposing residency requirements.  However, the Court explained that the lack of a cause of action for damages did not preclude the plaintiff from seeking declaratory and injunctive relief:

---

[12] Defendants attempt to distinguish these cases by arguing that they imply a cause of action under 42 USC 503(a), not 42 USC 503(g).  First, this distinction is insignificant because 42 USC 503(g) operates within the general framework of the administration of a state unemployment fund governed by the rules set forth in 42 USC 503(a).  Second, as discussed, although the parties focus on 42 USC 503(g), we conclude that deductions for penalties and interest violates 42 USC 503(a).

[13] Plaintiffs' 42 USC 1983 claim pertained only to their allegations that defendants' procedures for recouping overpaid benefits did not provide adequate notice or an opportunity for a hearing.

[P]laintiff's claim that a private cause of action for monetary damages is the only mechanism by which the statute can be enforced is incorrect. Plaintiff could enforce the statute by seeking injunctive relief pursuant to MCR 3.310, or declaratory relief pursuant to MCR 2.605(A)(1). . . . [A]n "actual controversy" exists for the purposes of a declaratory judgment where a plaintiff pleads and proves facts demonstrating an adverse interest necessitating a judgment to preserve the plaintiff's legal rights. In this case, plaintiff's claim is that defendant's residency requirement, made a condition of plaintiff's employment, was in violation of MCL 15.602(2). Such a claim would constitute an "actual controversy" for the purposes of an action for a declaratory judgment. [*Id*. at 196-197.]

"In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." MCR 2.605(A)(1). The "actual controversy" requirement is easily satisfied in this case because deductions from plaintiffs' benefits were being made in violation of federal law. Further, it is well established that declaratory actions may be brought to determine issues of statutory construction. See *Board of Educ of Detroit v Elliott*, 319 Mich 436, 455; 29 NW2d 902 (1947) (explaining that cases involving the "the validity and interpretation" of statutes were within the purview of the former declaratory judgment statute). See also 26 CJS, Declaratory Judgment, § 53, p 95 ("Questions as to the validity or construction of statutes may be determined in declaratory judgment proceedings, provided there is an actual or justiciable controversy.").

That plaintiffs unsuccessfully pursued a cause of action for damages does not defeat their claim for declaratory relief. The same is true as to plaintiffs' request for an injunction to prevent further unlawful deductions from unemployment benefits. Injunctive relief may be granted in declaratory actions as necessary. See *Barry Co Probate Court v Mich Dep't of Social Servs*, 114 Mich App 312, 319; 319 NW2d 571 (1982) ("After entry of judgment for declaratory relief, further relief, such as an injunction, may be granted, if necessary or proper, against any adverse party whose rights were determined by the declaratory judgment."). See also *Stein, Hinkle, Dawe & Assoc, Inc v Continental Cas Co*, 110 Mich App 410, 426; 313 NW2d 299 (1981).

In sum, per federal caselaw, plaintiffs have a cause of action for declaratory and injunctive relief under 42 USC 503. They could also seek that relief in an action for a declaratory judgment under MCR 2.605(A)(1). We remand to the Court of Claims for entry of a declaratory judgment that deductions from unemployment benefits to satisfy penalties and interest violates 42 USC 503 and for an injunction enjoining such deductions in the future.

## C. CONVERSION

We next address whether plaintiffs can maintain a claim of conversion on the basis of deductions made in violation of federal law. Plaintiffs argue that the Court of Claims erred by

determining that their statutory and common-law conversion claims are barred by the governmental tort liability act (GTLA), MCL 691.1401 *et seq*. We disagree.[14]

> The GTLA broadly shields government agencies from tort liability:
>
> Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed. [MCL 691.1407(1).]

Both common law and statutory conversion are considered torts. See *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 497 Mich 337, 354, 361; 871 NW2d 136 (2015). Plaintiffs nonetheless offer several reasons for why their suit is not barred by governmental immunity.

First, they argue that defendants are not immune from tort liability because the deduction of penalties and interest in violation of federal law exceeded the scope of defendants' governmental functions. This issue not properly preserved as it was raised for the first time in plaintiffs' reply brief on appeal. See *Henderson v Dep't of Treasury*, 307 Mich App 1, 7-8; 858 NW2d 733 (2014); *Blazer Foods, Inc v Restaurant Props, Inc*, 259 Mich App 241, 252; 673 NW2d 805 (2003). In any event, plaintiffs' argument lacks merit. The GTLA defines a "governmental function" as "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MCL 691.1401(b). In this case, defendants deducted penalties and interest while exercising the governmental function of administering unemployment insurance benefits. Although we conclude that the agency defendants violated federal law by deducting penalties and interest from subsequent unemployment benefits, there is no present dispute—given the dismissal of plaintiffs' state law claims—that their actions were authorized by MESA. Accordingly, the deductions were not ultra vires activity.

Plaintiffs next argue that because they seek restitution rather than damages, their suit does not sound in tort and so is not barred by immunity. In support, they rely on *Wright v Genesee Co*, 504 Mich 410; 934 NW2d 805 (2019). In that case, the county drain commissioner (Wright) sought a proportionate share of group health insurance premiums that were overpaid and refunded to the county and deposited into its general fund. *Id*. at 415. We held that Wright's breach-of-contract claim could proceed but that his tort claims, including conversion, were barred by the GTLA. *Id*. On remand, Wright amended his complaint to include a claim for unjust enrichment, which the county argued was also barred by the GTLA. *Id*. at 416. The Supreme Court disagreed and held that a claim of unjust enrichment does not subject the defendant to tort liability. The Court reasoned that, unlike tort and contract actions where the party seeks compensatory damages, the remedy for unjust enrichment was restitution. *Id*. at 419. Significantly, Wright did not merely

---

[14] As noted, in our prior opinion we affirmed dismissal of plaintiffs' conversion claims against the individual defendants who were acting in their official capacity. Therefore, we need only address immunity with respect to plaintiffs' claims against the agency defendants.

allege the mechanism used by the county to obtain the monies was improper, but that the county had no right to the sums at all.

Thus, plaintiffs' reliance on *Wright* is misplaced. Plaintiffs do not allege unjust enrichment, i.e., they do not claim that the state is not entitled to collect penalties and interest. They argue only that the mechanism used by the state to recoup those sums violates federal law, a proposition with which we agree. But absent a claim that the state has no right to assess penalties and interest, we do not see how our holding that deductions from future unemployment benefits is not permitted by federal law renders the state "unjustly enriched." Receipt of sums to which the state is entitled is not unjust enrichment and 42 USC 503 does not bar a state from imposing or collecting those sums except by the means at issue. Our conclusion that a particular means of collection may not be used does not change the fact that the state has an underlying and undisputed right to the amounts in question.

Plaintiffs next argue that the GTLA does not provide immunity from suits for intentional torts. In support, they cite several Court of Appeals cases decided prior to 1984.[15] However, after these cases were decided, the Supreme Court issued its decision in *Smith v Dep't of Public Health*, 428 Mich 540, 544; 410 NW2d 749 (1987), in which it unambiguously stated that "[t]here is no 'intentional tort' exception to governmental immunity." See also *Genesee Co Drain Comm'r v Genesee Co*, 309 Mich App 317; 869 NW2d 635 (2015); *Harrison v Director of Dep't of Corrections*, 194 Mich App 446, 460; 487 NW2d 799 (1992).

Lastly, plaintiffs argue that defendants are specifically not immune from conversion claims, asserting that governmental defendants were subject to such claims before July 1, 1965, and that the scope of the state's common law immunity was continued in accordance with the second sentence of MCL 691.1407(1).[16] However, the pre-1965 cases relied on by plaintiffs all involved municipalities and counties, which are not included in the GTLA's definition of "state." See MCL 691.1401(a), (e), and (g). Further, we have reviewed the cases cited by plaintiffs for the proposition that conversion claims were permitted against other governmental entities prior to July 1, 1965, and find that the cited cases do not support their argument.[17] Accordingly, plaintiffs fail to establish that conversion claims are excepted from the GTLA.

---

[15] Plaintiffs rely on *Elliott v Dep't of Social Servs*, 124 Mich App 124, 130; 333 NW2d 603 (1983), *Randall v Delta Charter Twp*, 121 Mich App 26, 34; 328 NW2d 562 (1982), and *Lawrence v Dep't of Corrections*, 81 Mich App 234, 240; 265 NW2d 104 (1978).

[16] The sentence reads, "Except as otherwise provided in this act, this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed." MCL 691.1407(1).

[17] *Loranger v City of Flint*, 185 Mich 454; 152 NW 21 (1915), and *Stock v City of Hillsdale*, 155 Mich 375; 119 NW 435 (1909), considered whether a city may use river water for public use when doing so allegedly burdens downriver users. These cases involved claims for damages and there was no assertion that the plaintiffs held title to the water. Other cited cases involved claims for assumpsit, which were essentially breach-of-contract claims involving municipal governments

-13-

III.  CONCLUSION

We reverse the Court of Claims as to the interpretation of 42 USC 503.  The statute unambiguously precludes states from deducting penalties and interest from unemployment compensation.  To the extent that conclusion may be questioned, the Department of Labor's interpretation of the statute in UIPL 45-89 is entitled to deference.  Thus, we conclude that the state may not reduce future unemployment benefits as a mechanism to collect interest and penalties due because of an overpayment.  We further conclude that federal law provides for a private cause of action to enforce the statute, but only as to declaratory and injunctive relief.  Finally, we affirm the Court of Claims dismissal of plaintiffs' conversion claims because they are barred by governmental immunity.  Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Amy Ronayne Krause

---

allegedly failing to pay their contractors for certain materials.  See *Ward v Alpine Twp*, 204 Mich 619; 171 NW 446 (1919); *City of Detroit v Mich Paving Co*, 38 Mich 358 (1878).  Plaintiffs also cite *City of Detroit v Mich Paving Co*, 36 Mich 335 (1877), which, although it makes reference to conversion, was essentially a contract case (whether the city could use sand left in the street by a plaintiff contractor after termination of the contract).  *Detroit Municipal Employees Ass'n v City of Detroit*, 344 Mich 670; 74 NW2d 888 (1956), involved an unusual situation in which employees sought to recover wages that had been withheld during the Great Depression pursuant to a city ordinance.  The only reference to conversion in that case was the observation that had such a claim been brought, the period of limitations would have barred it.  And *McCurdy v Shiawassee Co*, 154 Mich 550; 118 NW 625 (1908), concluded that a city could not be required to repay a loan when the borrowing was not authorized by the voters as was required.  The only mention of conversion in that case was its inclusion in a list of several causes of action brought by plaintiff all of which were rejected on the ground that plaintiff did not have an enforceable right to repayment.  In sum, plaintiffs have not cited any pre-1965 cases that support their view regarding the viability of a conversion claim against a governmental entity.